REA CONSTRUCTION COMPANY *v.* ROBEY ET AL.
[Two Appeals in One Record]

[No. 86, October Term, 1953.]

*Decided February 11, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Frank T. Gray* and *Jesse Slingluff, Jr.,* with whom were *Piper and Marbury,* on the brief, for appellant.

*Everett L. Buckmaster,* with whom were *George L. Clarke, Buckmaster, White, Mindel and Clarke* and *Newmyer and Bress,* on the brief, for appellees.

SOBELOFF, C. J., delivered the opinion of the Court.

This case arose from an accident that occurred in Prince George's County when an automobile driven by Hugh D. Robey ran off the end of a roadway then under construction and into some tree stumps beyond. For the resulting injuries to Mr. Robey and his wife, Thelma Robey, judgments were recovered against the appellant, Rea Construction Company, a contractor engaged in work on the road.

The appeal is from the trial judge's refusal of requested instructions which would have withdrawn the case from the jury, and from his denial later of the appellant's motion *n.o.v.* These instructions were sought and the motion made on the ground that there was no

legally sufficient evidence of negligence on the appellant's part directly causing or contributing to the appellees' injuries, and (in Mr. Robey's case) that as a matter of law Mr. Robey himself had been guilty of contributory negligence.

It is elementary that in these circumstances we must assume the truth of all the evidence tending to sustain the suits and of all inferences of fact fairly deducible therefrom, even though such evidence may be contradicted in every particular by opposing evidence. *East Coast Freight Lines v. Mayor and City Council of Baltimore,* 190 Md. 256, 272, and cases there cited.

The record discloses testimony which, if believed by the jury, would support the following version of the accident. In the early evening of November 3, 1951, the appellees and their daughter were proceeding south on Route 5 in Prince George's County, Maryland. Their journey had begun in Washington, District of Columbia, and their destination was Colonial Beach, Virginia. They had not traversed the road in the preceding three months. The road was being reconstructed; a dual highway with a grass strip, when completed, was to replace an old macadam road. For a distance of about three miles from the District Line as one proceeded in a southerly direction into Maryland, the highway had been substantially completed, but beyond this for a distance of a half to three-quarters of a mile was a stretch still under construction. Here the northbound lane was closed off and traffic in both directions was using the southbound concrete lane, which was about twenty-four feet wide.

At the end of this lane was a gravel connection turning at an angle to the left, in an easterly direction, to meet the old macadam road. The evening was "pitch dark and misty"; it had been raining and the roads were wet. Mr. Robey readily admitted knowing that the road was under construction. In fact, he saw a sign at the District Line announcing that the road was under construction, but he maintained on the witness

stand that from there on there were no signs, barricades, lights, signals, or other warnings to indicate that the paving would terminate suddenly, and there was no arrow or other indication of the left turn, and no lights to define the course of the gravel connecting strip. Proceeding at a moderate speed of thirty or thirty-five miles per hour, he continued in a straight line beyond the concrete, which ended abruptly, and then over a "bouncy, sudden rough place". He missed the leftward turn and the gravel connection to the place where the macadam resumes. He struck some tree stumps at a point about seventy-five or one hundred feet from the end of the paving. He did not see the stumps till he got out of the car.

Robey further testified that a state trooper arrived at the scene shortly after the accident and put one of his own flares on the road.

It was pointed out by appellant at the hearing of the appeal that the driver of the automobile had offered a different version on the stand as to when he first saw the stumps. He had said at one point that he saw the stumps seventy-five or one hundred feet ahead of him, and appellant argued before us, as it argued before the jury, that if so the driver should have stopped the car in time to avoid the collision. Appellees' counsel sought to explain or minimize this testimony of the appellant, calling it a mere inadvertence which was fully and clearly corrected in his later testimony, especially on cross-examination, and that in any event there was nothing to show that appellee had sufficient opportunity after realizing the presence of the tree stumps to avoid the accident. Such conflicts are for the jury to reconcile or resolve one way or another. It is not for the trial judge or this court to decide which testimony or which inferences are to prevail.

The cross-examiner suggested again and again to the appellees that there were flare pots at or near the scene of the accident, and other warnings, but these suggestions were firmly rejected by the appellees.

The  state trooper gave testimony that there were flare pots at intervals along the sides of the road, that the signal lights closer to the scene of the accident were nearer together, but that there were no flares where the concrete ended.  He said that there were warning signs at the District Line, but none thereafter as one proceeded south, except about a mile and a quarter north of the point where the concrete ended.

The appellant's witnesses gave a contrary version as to these flares, but for present purposes this is not before us.

Appellant maintains that irrespective of other lights and warnings the driver's own headlights should have revealed the conditions to him in time to avoid injury. Whether an automobilist, travelling at night, should have seen an obstruction on the highway, has been held to be ordinarily a question for the jury.  This Court has rejected the English rule that a driver must have his car under such control as to be able to stop within his range of vision, even though visibility may be affected by fog or other conditions, and if he fails to operate his automobile in such a manner that he cannot stop it before striking the obstruction, he is guilty of contributory negligence as a matter of law.  *Marshall v. Sellers,* 188 Md. 508, 513.  Under the circumstances of this case we think it was likewise for the jury to decide whether the driver should have seen the bend in the road and the stumps, as contended by the appellant.  Nor can we hold as a matter of law that there was negligence in using the low rather than the high beam headlights.  The trial judge correctly refused to rule upon these points as a matter of law as requested.

The appellant argued earnestly that the warning sign, although a mile and a quarter north of the place of the accident, and the flares placed at intervals along the road, and especially the bunched lights fifty feet before the road end fully and sufficiently warned the driver to be on guard; and that he should not have relaxed his vigilance till he saw a sign telling him he

had reached the end of the construction and that he might resume normal speed, or until he saw that safe conditions prevailed.

The counter argument of the appellees was, first, that the jury had the right to believe Robey's testimony that he saw no warning after the sign at the District Line. Also they contend that the presence of flares at intervals for a long distance where the road bed was normal constituted in effect a trap which disarmed him. Above all they say that he had no reason to suspect an abrupt termination of the paving and an unmarked turn. They also argue that the jury could credit Robey's testimony that he saw no flares, and that this was because they were not there; and that in any event a group of flares fifty feet north of the end of the concrete, if seen, would serve merely to indicate that construction was in progress, but the specific danger was in no way indicated and could not reasonably be anticipated.

The respective contentions presented a typical case for the jury. We cannot say there was no substantial evidence upon which the jury could find negligence, nor can we declare upon his record that Mr. Robey was guilty of such distinct, prominent, decisive acts of recklessness as to leave no opportunity for reasonable minds to differ. Cf. *Tri-State Engineering Co. v. Graham,* 158 Md. 328, 332; *Baltimore Asphalt Block and Tile Co. v. Klopper,* 152 Md. 529, 534; *Mayor and City Council of Baltimore v. State, use of Cirtout,* 146 Md. 440 (primary negligence only).

When the interplay of circumstances is susceptible of different interpretations by rational minds, the problem is essentially one for the jury; the trial judge is not permitted to transform it into a question of law for his own determination. The choice between conflicting facts and the weighing and assessing of competing inferences radiating therefrom is the jury's province.

*Judgments affirmed, with costs.*