J. NORMAN MARSHALL, ET AL., *v.* JOHN
CLARENCE SELLERS
J. NORMAN MARSHALL, ET AL., *v.* CLARENCE
E. SELLERS

[Nos. 134-135, October Term, 1946.]

510

[redacted]

*Decided May 20, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*W. Hamilton Whiteford,* with whom were *Due, Nickerson & Whiteford* and *Omer D. Crothers, Jr.,* on the brief, for the appellants.

*E. D. E. Rollins* and *Wesley E. Thawley* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

These two suits were brought in the Circuit Court for Talbot County against J. Norman Marshall and Norman D. Marshall, copartners trading as Marshall's Express, to recover damages for injuries alleged to have been caused by the negligence of their driver in parking their motor truck on the highway between Chester and Stevensville in Queen Anne's County. In the first case the plaintiff, John Clarence Sellers, infant, alleged that, while driving an automobile westwardly toward Stevensville on September 12, 1945, at about 12:45 a. m., he collided with defendants' truck, which was parked with its left wheels on the right side of the road without displaying any lights, flares or warning signal of any kind, and that as a result of the collision he was seriously injured and the automobile was damaged. The second case was instituted by the infant's father, Clarence E. Sellers, to recover for the damage to his automobile, his son's medical and hospital expenses, and loss of his son's services.

The cases were tried together in the Circuit Court for Cecil County. It appeared at the trial that the infant plaintiff, who had been working on his father's farm on Kent Island since his graduation from high school, borrowed his father's automobile, a Chrysler coupe, to go to a dance near Queenstown. About midnight he left there for home, but after he passed Chester his coupe crashed into the left rear end of defendants' truck. He was rendered unconscious, and was taken to the Easton

Hospital, where Dr. Virginia Palmer found a laceration about two inches long on the right side of his head and another on top of his head. The physician removed some pieces of glass from the cuts, and some blood from his right ear. Also finding some fragments of bone, she concluded, without making an X-ray photograph, that he had sustained a fracture of the skull. After he had been in the hospital three days, his physician's father, Dr. William Palmer, examined him and concurred in the diagnosis. The jury, after the Court had read the granted prayers, rendered a verdict for $8,000 in favor of the infant plaintiff, and a verdict for $1,340.60 in favor of his father. Defendants then appealed from the judgments entered upon the verdicts.

The Maryland Motor Vehicle Law makes it unlawful for any person to operate a truck, whose gross weight of vehicle and load capacity is more than 8,500 pounds, upon any highway in the State, outside of a business or residential district, whenever there is insufficient daylight to make substantial objects visible at a distance of 300 feet, unless there shall be carried in the truck not less than three flares or other signals capable of producing a brilliant warning light for eight hours. Whenever any such truck or its lighting equipment is disabled during the period when lighted lamps must be displayed on motor vehicles, and the truck cannot be removed immediately from the main traveled portion of the highway, the driver shall immediately cause the flares or other signals to be lighted and placed upon the highway, one at a distance of approximately 100 feet in front of the truck, another at a distance of approximately 100 feet in the rear of the truck, and the third upon the roadway side of the truck. Laws of 1943, ch. 1007; Code, Supp. 1943, art. 66½, sec. 240.

In this case the total length of the tractor and trailer was about 36 feet. The truck driver, Leonard Schuyler, of Denton, testified that, when he left Baltimore on September 10 on his trip to the Eastern Shore by way of Matapeake Ferry, he had three flares in his truck; but

on the following day, when he left Salisbury, with his truck loaded with tripe, on his return trip to Baltimore, he did not notice that the flares were missing. Just as he passed Chester, when it was growing dark, he turned on the lights, but the fuse blew out. He declared that it was not until he had parked the truck along the side of the road and looked for the flares that he found they were gone. Yet, though he was only a few hundred yards from Chester, and only about a mile east of Stevensville, where he could have looked for help, he climbed into the truck about 8:30 p. m. and went to sleep. There is no question that the evidence warranted a finding of primary negligence.

Appellants, however, requested directed verdicts on the ground that the infant plaintiff was guilty of contributory negligence. They contended that, if he had exercised reasonable care, he could have avoided the collision. Some of the courts of this country have adopted the English rule that a driver must have his car under such control as to be able to stop within his range of vision, even though visibility may be affected by fog or other conditions, and if he fails to operate his automobile in such a manner that he cannot stop it before striking the obstruction, he is guilty of contributory negligence as a matter of law. In Pennsylvania, for example, it was held in *Simrell v. Eschenbach*, 303 Pa. 156, 154 A. 369, that a motorist was guilty of contributory negligence as a matter of law when he operated his automobile at night at the rate of 25 miles per hour and ran into a truck, which was parked on the road without lights, and which he could not avoid hitting because he could not see it on account of a storm until he was within 20 feet of it. But we have held that this rule is too broad, because it fails to consider the fact that a person driving at night has at least some right to assume that the road ahead is safe for travel unless a danger is indicated by a red light, and also the fact that visibility is different in different atmospheric conditions. *Frederick & Baltimore Transportation Co.*

v. *Mumford*, 154 Md. 8, 139 A. 541; *Robert v. Wells*, 170 Md. 367, 184 A. 923; *Morehouse v. City of Everett*, 141 Wash. 399, 252 P. 157, 160, 58 A. L. R. 1482. We think the determination of whether an automobile driver should have seen an obstruction at night is under many circumstances a question for the jury. Each case should be considered in the light of its own peculiar facts and circumstances, the test being what an ordinarily prudent person would have done under the circumstances as they existed at the time of the accident.

The collision in this case occurred on a straight and level road, but the road was rather narrow. According to an officer of the State Police, who arrived on the scene less than an hour after the accident, the paved surface of the road was about 21 feet in width, and the left wheels of defendants' truck were about five feet out on the paved surface. Thus the truck obstructed about one-fourth of the road. Furthermore, the night was dark and slightly foggy. Young Sellers testified that the head-lights on his father's car were very good. The Motor Vehicle Law now provides that whenever the driver of a vehicle approaches an on-coming vehicle within 500 feet, such driver shall use a distribution of light or composite beam so aimed that the glaring rays are not projected into the eyes of the on-coming driver. Laws of 1941, ch. 423; Laws of 1943, ch. 1007; Code, Supp. 1943, art. 66½, sec. 224. Sellers testified that when he saw a car approaching about 500 feet ahead, he dimmed his headlights in compliance with the law, and then almost immediately after the car had passed, he saw a large dark object directly in front of him, and he could not avoid hitting it. He said that the bright headlights of the oncoming car did not illuminate the truck, but they did not prevent him from seeing the road. Appellants suggest that it might be inferred that Sellers was driving at an excessive rate of speed from the extent of the damage to the coupe and the fact that it went a distance of 66 feet after the impact. Sellers, however, testified that he was driving carefully on the right side of the

road, and that his rate of speed was not more than 35 miles an hour. It is an established rule that where evidence of negligence is contradictory, or is of such a character that reasonable minds, after considering all the circumstances surrounding the happening of an accident, may draw different conclusions as to whether it constituted proof of negligence and contributed to the accident, it is not for the court to determine its quality as a matter of law, but it is for the jury to pass upon it. *York Ice Machinery Corporation v. Sachs*, 167 Md. 113, 122, 173 A. 240; *Baltimore Transit Co. v. State, to Use of Schriefer*, 184 Md. 250, 259, 40 A. 2d. 678; *Crunkilton v. Hook*, 185 Md. 1, 42 A. 2d 517, 520.

We must take the view of the evidence most favorable to the plaintiff, and judge the degree of care which he exercised in the operation of his automobile by those conditions on the highway ahead of him which he should have reasonably foreseen. The traffic on the road after midnight was not heavy. His speed alone could not be held as a matter of law to be greater than was reasonable in view of the conditions on the highway as may have been seasonably anticipated. While he could not ignore the chance that there might be on the highway a motor vehicle which was not lighted as the law requires, it cannot be ruled as a matter of law that in the operation of his automobile he could not rely, to some extent at least, on such a vehicle bearing a rear red light in compliance with the law and thus giving him warning of its presence. Whether lack of care in the operation of the automobile was legally a contributing cause of the collision depends upon whether it ought to have been foreseen according to the usual experience of travelers. A person is bound to anticipate and provide against what usually happens and is likely to happen, but is not bound to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable. *Falk v. Finkelman*, 268 Mass. 524, 168 N. E. 89. The Court below could not properly take the case from the jury, unless no other rational inference could be drawn

from the evidence than that Sellers, in the exercise of due care, should have seen the unlighted truck and avoided the accident in spite of the fog and the glare of the headlights of the passing car. In our judgment the evidence does not demand that conclusion.

Appellants also urged the trial judges to instruct the jury to disregard all testimony concerning the pain in young Sellers' right ear. They claimed (1) that there was no evidence except that of Dr. William Palmer to show that the ear trouble was due to the accident, and (2) that Dr. Palmer was not qualified to express an opinion because his examinations were cursory. They pointed out that he did not see the patient until after he had been in the Easton hospital three days, and hence did not see the open wounds on his head, and that he did not see him again until one year later, when he examined him in the bar library in the Court House in Elkton just before the trial, but did not examine his ear. Dr. Palmer attended the trial and heard all the testimony. The patient declared that his health had been excellent prior to the accident, but after the accident he suffered frequently from pain on the right side of his head, and from dizziness. His father recalled that he had "some kind of a gathering" in his right ear early in 1946, and was confined to the house by the suffering for about a week. He further said that his son never had any ear trouble since he was five years old, when his tonsils were removed. The boy's mother testified that the ear trouble was most severe in July, 1946, and that there was a discharge of pus from the ear. The family physician, Dr. Sattelmaier, who attended the boy in 1946, was not called as a witness. After Dr. Palmer had heard the witnesses, he was asked the question: "Assuming that all the testimony you have heard in this case is true, and that this plaintiff was a boy of good sound health prior to the accident, and taking into account the examination that you have made today and the plaintiff's physical condition as shown by the testimony, and

also coupled with your previous experience with the case as an attending physician, to what would you attribute his complaints?" He answered that he attributed them to the skull fracture and the associated injuries.

It is recognized that a physician, in order to testify concerning a patient's health or injuries, should appear to have had adequate opportunities to observe the patient, and, if the matter requires it, to have directed his attention particularly to the specific ailment. A diagnosis based on sundry information from third persons in general has no claim for admission in evidence, but where the information as to symptoms has been received from an attending physician or nurse having personal observation and a direct interest in learning and describing accurately, there is ample justification for admitting the testimony based in part thereon. 3 *Wigmore on Evidence*, 3d Ed., secs. 688, 689. This Court has held that an osteopath is qualified to express an opinion in reference to conditions which he has either personally observed or ascertained by exploratory investigation. *Calder v. Levi*, 168 Md. 260, 177 A. 392, 97 A. L. R. 880.

In the case at bar the medical witness had the benefit of many years of experience as a physician and surgeon, had observed the patient, had consulted with the chief attending physician, and had heard the testimony of the witnesses. It is elementary that where a witness himself cannot supply the premises by details from his own observation, such premises may be presented hypothetically. The premises must be supplied in one form or the other, but it is not necessary that both be available. If the witness is sufficiently skilful, his opinion may be adequately obtained upon hypothetical data alone, and in such case it is entirely immaterial whether he has ever seen the patient. *De Donato v. Wells*, 328 Mo. 448, 41 S. W. 2d 184, 82 A. L. R. 1331; 2 *Wigmore on Evidence*, 3d Ed., secs. 676, 677.

In the court below Dr. Palmer testified from both personal observation and hypothetical presentation. He examined the patient in the hospital three days after the injuries were sustained, and again just before the trial. His expert opinion was sought upon premises partly furnished by personal observation and partly remaining to be supplied by hypothesis. Where a physician is familiar with the facts of an accident and the nature of the injuries, he is competent to testify as to whether the injuries were caused by the accident, although the facts in evidence are not recounted to him in a hypothetical question before he expresses his opinion. The details which the expert has personally observed can be elicited on either direct or cross-examination, and these details can be associated with the other grounds for the general conclusion; and if it is discovered that any essential facts have been overlooked, the weight of his opinion will thereby be weakened or destroyed. The opinion of an expert witness, the grounds upon which it has been formed, and the weight to be accorded to it are all matters for the consideration of the jury. *Davis v. State,* 38 Md. 15, 41; *Langenfelder v. Thompson,* 179 Md. 502, 20 A. 2d 491, 136 A. L. R. 960; *Starr v. Oriole Cafeterias,* 182 Md. 214, 34 A. 2d 335; *Yellow Cab Co. v. Henderson,* 183 Md. 546, 39 A. 2d 546. In *Baltimore City Passenger Ry. Co. v. Tanner,* 90 Md. 315, 45 A. 188, where the plaintiff sought damages against the railway company for injuries sustained by him when a railway car ran into his wagon, and he was thrown out of the wagon and fell upon his side and head, this Court held that a medical witness, who heard the plaintiff narrate on the witness stand the facts of the accident, was qualified to state whether or not the deafness in the plaintiff's left ear was the natural and probable result of the accident.

The writer of this opinion and Judge Collins are inclined to the view that all the testimony of the consulting physician in the court below was admissible.

However, the majority of the Court takes the view that Dr. Palmer did not have sufficient knowledge of the facts to enable him to form an opinion as to the ear trouble, since an infection of the ear may develop from causes which are not traumatic, and the accident was sustained in September, 1945, and the patient had no ear trouble until early in 1946, and the pain was not acute until July, 1946. It is unquestioned that an opinion of an expert must be based upon facts, proved or assumed, sufficient to form a basis for an opinion, and cannot be invoked to supply the substantial facts necessary to support that conclusion. If a witness called upon to give expert testimony is acquainted with the facts of the case, having had personal knowledge or having made a personal investigation, he may give his opinion upon the basis of his knowledge and observation in response to direct investigation, provided that he has sufficient knowledge of the facts to enable him to form an opinion entitled to be given weight by the jury. The facts upon which the expert bases his opinion must permit reasonably accurate conclusions, as distinguished from mere guess or conjecture. The majority of the Court believes that the trial Court committed reversible error in not excluding all the testimony as to the ear trouble because it was not legally sufficient to justify a finding that such trouble was caused by the accident. This question affects only the boy's case, No. 134, so that No. 135 will be affirmed.

*Judgment in No. 134 reversed and case remanded for a new trial, with costs.*

*Judgment in No. 135 affirmed, with costs.*