271 So.2d 232 (1973)
Donald Lee COOK, Appellant,
v.
STATE of Florida, Appellee.
No. 71-922.
District Court of Appeal of Florida, Second District.
January 5, 1973.
Jack T. Edmund, of Edmund, McDaniel & Garrard, Lake Alfred, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and David Luther Woodward, Asst. Atty. Gen., Tampa, for appellee.
PIERCE, Judge (Ret.).
Appellant Donald Lee Cook timely appeals his judgment and sentence, after having been convicted of armed robbery as charged in an information filed January 21, 1971, in the DeSoto County Circuit Court.
Cook entered a Jacksons Minit Market on December 24, 1970, pointed a shotgun at the cashier, held out a paper bag, and instructed her to fill it with money. Although the cashier grabbed the gun, she complied with his request. Cook then instructed the cashier to get around the counter as she was going with him. Upon arriving at the car Cook was using, the cashier started hollering to her "boss-woman", *233 who lived next door to the convenience market. She shoved Cook and started running from him. Cook picked up the bag of money and made a hurried getaway in the vehicle.
Cook does not deny that he committed the offense, but claims that he has no recollection of what happened that night.
Cook was seventeen years old at the time of the robbery. When he was fifteen years old he was in an automobile accident and received a head injury. He had a compound skull fracture in the right frontal area which was elevated, and by surgery had a cranioplasty performed resulting in the insertion of a metal plate in his skull. Cook testified that he had a series of black-outs following the surgery, the first occurring while in the Service. Because of the black-outs and attacks, he was discharged from the Service. He testified that he would become destructive, and that he would lose all recollection of the events that occurred for about four or five hours. He said that he thought he had had such an attack on the night of the robbery, but that he did not remember.
His close friend, Taylor, testified on behalf of the State that the day after the robbery Cook asked Taylor to take him to his mother's home in Georgia, which he did. On the way Cook told Taylor that he was in a little bit of trouble and asked Taylor not to tell anyone where he was.
Two psychiatrists, Dr. Magnon and Dr. Bellino, testified on behalf of Cook. They stated that they did not administer any of the standard tests in determining whether Cook was suffering any organic brain damage, but that from talking with Cook and his mother in April they formed the opinion that Cook had psychomotor epilepsy, and that at the time of the crime he could have been having a seizure and did not know right from wrong. Dr. Bellino further testified that after making his report he consulted with Dr. Graham, a neurosurgeon, who had made an EEG test of Cook, which showed that Cook was normal. They testified, however, that one could have a normal EEG and still be epileptic.
In rebuttal the State offered the testimony of Dr. Steele, a court-appointed psychiatrist, who testified that he examined Cook on October 27, 1971. He talked with Cook about an hour and administered mental status examinations, a Bender gestalt test, the Rorschach test, and checked his reading level, and these and other tests did not reveal any objective evidence of organic brain damage, nor did they reveal any objective evidence of psychosis. He also found no objective signs of psychomotor epilepsy. He arranged to have an EEG test performed, and was aware that Cook had had a head injury. It was his opinion that Cook knew right from wrong when he committed the crime. Upon being asked a hypothetical question of whether a man who entered a convenience store carrying a gun and performing all the acts as related, could be suffering from a seizure of psychomotor epilepsy at the time, Dr. Steele stated that he would not be. He further stated that when a person is undergoing a psychomotor seizure he shows some particular kind of stereotype behavior, which is repeated with each seizure.
The lower Court submitted to the jury the question of Cook's sanity at the time of the crime, and gave the jury appropriate instructions on the law.
The record does not reflect that defense counsel moved for a directed verdict, but Cook argues that the court committed fundamental error in not directing a verdict for him at the conclusion of all the evidence.
The rule is well settled in Florida that all men are presumed sane but "the presumption vanishes when there is testimony of insanity sufficient to present a reasonable doubt as to the sanity of the defendant and he is entitled to an acquittal if the State does not overcome the reasonable doubt." Putnam v. State, Fla.App. 1969, 227 So.2d 60; Brady v. State, Fla.App. *234 1966, 190 So.2d 607; Byrd v. State, Fla. App. 1965, 178 So.2d 886; Norman v. State, Fla.App. 1963, 156 So.2d 186; cf. Farrell v. State, Fla. 1957, 101 So.2d 130.
In the case sub judice there was sufficient testimony by the expert witness, as well as other witnesses, to overcome the reasonable doubt as to defendant's sanity. There was a conflict in the evidence, and the issue was therefore properly submitted to the jury. The jury's finding that the defendant was sane was supported by the evidence, Putnam v. State, supra; Norman v. State, supra.
Cook urges this Court to re-examine the issue of a proper test of insanity for the State of Florida and to abrogate the M'Naghten Rule adopted by the Florida courts.
In 1959 our Supreme Court adhered to the Rule in M'Naghten's case, Piccott v. State, Fla. 1959, 116 So.2d 626, and as recently as 1970 recognized that it had been long since adopted by the Florida Courts, Parkin v. State, Fla. 1970, 238 So.2d 817, 822. We see no reason to abandon the "right or wrong" test in determining the issue of insanity, or at this time to depart from M'Naghten.
We find no merit in other points raised by appellant.
The judgment appealed is therefore 
Affirmed.
MANN, C.J., and HOBSON, J., concur.