682 A.2d 248

Samuel JONES, Jr.

v.

STATE of Maryland.

No. 54, Sept. Term, 1995.

Court of Appeals of Maryland.

Sept. 12, 1996.

**450**

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

Samuel Jones, Jr., the petitioner, was charged with possessing with intent to distribute crack cocaine seized from his person during a search conducted on December 16, 1993. He moved to suppress the evidence. A hearing on that motion was held in the Circuit Court for Anne Arundel County. After that hearing, the matter having been held *sub curia,* the court granted the motion. Pursuant to Maryland Code (1974, 1995 Repl.Vol.) § 12–302(c)(3)(i) of the Courts and Judicial Proceedings Article[1], the State appealed that decision to the Court of Special Appeals. That court reversed and remanded the case for trial. *State v. Jones,* 103 Md.App. 548, 653 A.2d 1040 (1995). This Court, on the petitioner's request, issued the writ of certiorari to review the propriety of the judgment granting the motion to suppress. We shall reverse the judgment of the intermediate appellate court.

---

1. That section provides:

    In a case involving a crime of violence as defined in § 643B of Article 27, and in cases under §§ 286 and 286A of Article 27, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights.

## I.

The motions court accepted the suppression hearing testimony of Officer Sean W. Ottey as to the events leading to the petitioner's arrest.[2] Consequently, we will set out only Officer Ottey's version of the facts.[3]

While patrolling an area of Annapolis known for its high level of drug activity, an "open air drug market," Officer Ottey and Officer Rice noticed the petitioner and another man standing by themselves on the sidewalk near the intersection of Carver Street and Dorsey Avenue. After observing them briefly, the uniformed officers approached the two men, Officer Ottey taking the petitioner and Officer Rice the other individual. Officer Ottey informed the petitioner that he was in a known drug area and asked him why he was there. Without waiting for a reply, Officer Ottey then inquired whether the petitioner had any drugs or guns on him, to which the petitioner answered "no." At that point, Officer Ottey requested permission to "check" the petitioner and petitioner consented to be searched.

Proceeding to pat the petitioner down, Officer Ottey felt a bulge when he reached the petitioner's left front pants pocket and he asked the petitioner what it was. Instead of responding to the question, the petitioner revoked his consent to search. Notwithstanding that revocation, Officer Ottey reached into the Petitioner's pocket and removed the source of the bulge, a package containing a substance which Officer Ottey recognized as crack cocaine. Officer Ottey retained custody of the substance, which, as later analysis confirmed, was crack cocaine, but he did not arrest the petitioner at that time. That occurred several months later.

---

**2.** Officer Ottey's testimony was corroborated by that of Officer Thomas Rice, who, in a separate vehicle, was patrolling the same area of Annapolis at the same time. He testified that he accompanied Officer Ottey when he went to investigate the situation.

**3.** The petitioner testified that he had not consented to being patted down and that he was not arrested until five months later. The motions court obviously did not believe the petitioner with respect to the former.

Focusing on his state of mind prior to the seizure, particularly as relates to the bulge he felt in the petitioner's pocket, the State asked Officer Ottey what his perception of the bulge was at that time. Officer Ottey had earlier testified that he was familiar with how crack cocaine is packaged for street-level sales and that he had conducted pat-downs in the past in which he had recovered crack cocaine. He had also testified that he had been involved in 20 drug arrests that year, 90% of which involved crack cocaine. Specifically, the State wanted to know, "What did you think it was?" Officer Ottey responded, "When I squeezed it, prior to him revoking consent, I could feel the numerous rock-like substances in there, and I knew right then and there that I had crack cocaine *or* . . . in his pocket." (Emphasis added). The State continued the inquiry: "Based on your training and experience, was it readily apparent what it was, the nature of the substance?" In response, Officer Ottey said that it was, that, indeed, it was readily apparent to him that the substance was crack cocaine. Except for asking on redirect examination whether Officer Ottey had felt crack cocaine before, the State did not further delve into the basis for Officer Ottey's assertion of knowledge and certainty.

On cross-examination, defense counsel sought to undermine Officer Ottey's testimony regarding his ability to identify crack cocaine by touch.[4] Inquiring into the grounds for Officer Ottey's asserted belief that the substance he felt in the Petitioner's pants pocket was crack cocaine, he asked, "If . . ., for example, Judge Thieme was standing in the hall, and he

---

**4.** In *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, 346 (1993), the Supreme Court held:

If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

We have not addressed this issue. The parties and the trial court proceeded on the assumption that the "plain feel" doctrine was applicable in the case *sub judice*. We shall indulge the same assumption.

... provided you consent to search him, and you had felt in his pocket a similar item, would you have ... drawn ... the conclusion at that point that it was crack cocaine?" Officer Ottey replied, "[Y]es, sir." Moreover, although he also conceded that "being in an open-air drug market did add to [the] conclusion [he] had drawn based on touch ... the feeling that I observed," Officer Ottey left no doubt that location was not a critical factor in his identification. Responding to the question, "what is it about the object ... that led you to the conclusion that it was crack cocaine?," he said, "[t]he texture of it, the way it felt." Having reminded the officer that he had neither smelled nor seen the substance, the petitioner asked if there were other criteria that led him to conclude that it was crack cocaine. Officer Ottey indicated that it was "[j]ust the way it felt," nothing else.

At the conclusion of the hearing, the motions judge held the matter *sub curia* in order more carefully to read *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the "plain feel" case, upon which the State relied. When he reconvened the hearing, he granted the petitioner's motion to suppress, explaining:

On December the sixteenth, nineteen ninety-three, Officer Ottey of the Annapolis City Police Department was on routine patrol in an area known as an open air drug market. And these are facts that I'm accepting. Officer Ottey approached the Defendant, asked him if he had any drugs or weapons, the Defendant replied that he did not. Ottey then asked if he could check. The Defendant replied that he could. Ottey then patted down the Defendant. In the Defendant's [left] pants pocket Officer Ottey felt a bulge. At this point, the Defendant requested the Officer to stop.

Officer Ottey testified, and I'm quoting, he immediately recognized [the bulge] to be crack cocaine. Despite the request that Officer Ottey cease, he seized the substance from the Defendant's pocket. The Defendant was not arrested at the time.

Now, there's no question, and the State [con]cedes that the basis for the seizure was the probable cause issue not as

any *Terry* type of situation[5] or anything else under the . . . plain feel doctrine. . . .

Now, the problem is, and the Officer testified as an expert, and I accept him as an expert, but . . . it's not just a question of being an expert and coming in and saying the magic words like it was readily apparent would be the words from the Supreme Court. . . . I have to make my determination as to whether I'm going to accept the expert's opinion based upon the facts upon which his opinion was based. And there are insufficient facts for me to accept that opinion [in] the record.

For that reason, the Court will grant the Motion to Suppress.

## II.

The Court of Special Appeals, in a 2–1 decision, reversed the trial court's judgment. The majority reasoned:

The issue decided was the existence . . . of probable cause on the part of the officer. The appellate review of such an issue calls for our own independent *de novo* determination of whether Officer Ottey had enough data to permit him reasonably to conclude that he had probable cause.

In that regard, the historic fact of Officer Ottey's conclusion, even if not its accuracy, is before us for our review. It is our independent determination that 1) the presence of Jones on a corner in an "open air drug market"; 2) the detection of rock-like substances in Jones's pocket; 3) the officer's expert ability, based on his training and expertise, to recognize the feel of crack cocaine; and 4) the officer's conclusion that the rock-like substance he felt was crack

---

**5.** Officer Ottey interpreted the petitioner's consent to being checked out as a consent to a frisk, even though the request itself was not expressly so limited. And the issue in this case is presented in that context. Consequently, we do not undertake to define in this case the scope of a consensual search and, in particular, whether, under the circumstances herein presented, a consensual search must be confined to the same limits as a frisk under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

cocaine was a legally sufficient basis to support the officer's probable cause determination.

Since the officer's subsequent warrantless seizure of the crack cocaine was reasonable, the evidence should not have been suppressed.

*Jones,* 103 Md.App. at 615, 653 A.2d at 1073–74.

The dissenting judge perceived the issue to be an entirely different one:

Although he accepted Officer Ottey as an expert witness, i.e., one who by training and experience is able to recognize crack cocaine by sight and by touch, Judge Thieme concluded that there had been presented insufficient evidence as to the extent of the officer's training, experience or tactile acuity to persuade him, as trier of fact, that it was "readily apparent" to the officer that what he felt in Jones's pocket while "patting him down" was crack cocaine. Certainly, that determination was first level fact-finding, which, not being clearly erroneous, is binding on us. Md. Rule 8–131(c).

*Id.* at 617, 653 A.2d at 1074 (Bloom, J., dissenting). Interpreting the motions court as ruling that the State had not established the basis for Officer Ottey's expert witness opinion, it concluded:

What this case boils down to, once we defer to Judge Thieme's finding that he does not accept the Officer's assertion that it was readily apparent to him that what he felt was crack cocaine, is that the Officer's seizure of the substance from appellee's pocket was based on suspicion, not probable cause. An experienced police Officer observed two men conversing on a street corner in a residential neighborhood, where drugs are sold with some degree of frequency. One of these men had something in his pants pocket that could have been crack cocaine. Because of the neighborhood, the Officer perhaps reasonably, *suspected* that the substance was crack cocaine, and based on that suspicion, which does not amount to probable cause, he seized the substance.

*Id.* at 619, 653 A.2d at 1075. The dissent pointed out that deference to the trial court's factual determination required that the trial court's ruling on the motion to suppress be upheld.

The State's brief in this Court adopts the Court of Special Appeals' approach, *de novo* review of the trial court's ruling. The State acknowledged, however, that the appropriate standard of review depends upon whether the motions judge found: (1) that, when Officer Ottey felt the substance in the petitioner's pocket, he had no actual subjective belief that the substance was contraband or (2) that, while Officer Ottey did have a subjective belief that the substance was contraband, objectively, that belief did not amount to probable cause.

The petitioner also offers two possible, though somewhat related, interpretations of what the motions judge did. First, he suggests that the motions judge determined, as a matter of credibility, that Officer Ottey only had a suspicion, not amounting to probable cause, regarding what was in the petitioner's pocket. The petitioner also asserts that the motions judge rejected Officer Ottey's expert opinion because it was not supported by the reasons upon which it was based— the State failed to provide sufficient facts as a foundation for Officer Ottey's testimony. Therefore, in the petitioner's view, the Court of Special Appeals erred by not deferring to the motions court's evidentiary findings.

### III.

When the question is whether a constitutional right, such as, as here, a defendant's right to be free from unreasonable searches and seizures, has been violated, the reviewing court makes its own independent constitutional appraisal, by reviewing the law and applying it to the peculiar facts of the particular case. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239, 1240 (1990) (citing *State v. Gee,* 298 Md. 565, 571, 471 A.2d 712, *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984)). When the facts are in dispute, deference is paid to the trial court, that is, its findings of fact are

accepted unless they are clearly erroneous. In making the latter determination, the court must give "due regard to the opportunity of the trial court to judge the credibility of the witnesses." Maryland Rule 8–131(c).[6] When the motion to suppress has been denied, the only relevant facts "are ... those produced at the suppression hearing, *see Trusty v. State*, 308 Md. 658, 521 A.2d 749 (1987), which are most favorable to the State as the prevailing party on the motion." *Simpler v. State*, 318 Md. 311, 312, 568 A.2d 22 (1990). On the other hand, when the motion is granted, the evidence produced at the suppression hearing must be considered in the light most favorable to the defendant.

Accepting these principles, the State submits that the motions judge, by applying the law of probable cause to the facts of this case, determined, as a matter of law, that Officer Ottey did not have probable cause to seize the crack cocaine from the petitioner's pocket. It argues, therefore, that the Court of Special Appeals properly conducted *de novo* review of that ruling.[7]

---

**6.** Maryland Rule 8–131(c), *Action Tried Without a Jury*, provides:

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

**7.** For this argument to succeed, the State has to establish that the ruling of the motions court was that Officer Ottey did not have probable cause to seize the cocaine, rather than being based on its fact-finding or credibility determination. In an effort to refute the latter possibilities, the State maintains that both the motions court and defense counsel believed that Officer Ottey had a subjective belief that the substance was contraband, citing as an example the court's use of the word, "suspicious," to describe Officer Ottey's level of certainty. Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Malcolm v. State*, 314 Md. 221, 222, 550 A.2d 670, 673 (1988) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)) (citations omitted). As such, it requires less evidence than would justify conviction, but more evidence than mere suspicion. *Edwardsen v. State*, 243 Md. 131, 136, 220 A.2d 547, 550 (1966). Conceding, therefore, that the motions court believed that Officer Ottey was subjectively suspicious, that does not necessarily mean that it accepted Officer Ottey's testimony

In order for this argument to succeed, however, the State must demonstrate that the motions judge actually made a probable cause determination and did not, as the dissenting opinion in the intermediate appellate court opined, reject Officer Ottey's testimony because the facts the State adduced failed to substantiate his opinion. The approach of the Court of Special Appeals' majority was to label illogical both the motions judge's analysis and the result he reached thereby. It reasoned:

> Judge Thieme ... seemed to accept the truth of all of the premises that went into the building of a syllogism and then, inexplicably, found the conclusion invalid. He accepted fully the credibility of Officer Ottey. He accepted the historic facts of the 'open-air drug market' and of the detection of the rock-like substance in Jones's pocket by Officer Ottey. He accepted Officer Ottey as an expert on the feel of crack cocaine, for that was the only issue on which Officer Ottey's expertise had any possible relevance. He accepted the fact that Officer Ottey concluded that what he felt was crack cocaine. Judge Thieme simply declined to accept the validity of Officer Ottey's conclusion.
>
> In effect the decision was, 'I accept the officer's expert ability to recognize crack cocaine when he felt it. He said that what he felt was crack cocaine, but I don't buy it.' [8]

Under this approach, a motions court that finds a witness, whom it has also accepted as an expert, credible with regard to the facts, necessarily must accept whatever conclusion that witness may draw from those facts.

---

that he subjectively believed that what he felt was contraband and that that was immediately apparent prior to the petitioner revoking consent to search. In short, what the State points to simply does not establish the point for which it is offered.

Other testimony by Officer Ottey also weighs against the State's argument because it provides a clear basis upon which the motions court could have disbelieved Officer Ottey. *See* discussion, Part V. *infra*.

**8.** The State conceded at oral argument that the trial court can accept the expert as an expert but reject the expert's conclusion on probable cause.

In performing its fact-finding role, the trier of fact decides which evidence to accept and which to reject. Therefore, in that regard, it is not required to assess the believability of a witness's testimony on an all or nothing basis; it may choose to believe only part, albeit the greatest part, of a particular witness's testimony, and disbelieve the remainder. *Muir v. State*, 64 Md.App. 648, 654, 498 A.2d 666 (1985), *aff'd*, 308 Md. 208, 517 A.2d 1105 (1986). Moreover, it is the trier of fact that decides to what, if any, weight the evidence adduced is entitled. And, having accepted a witness's testimony as to the facts, it is the trier of fact that must draw the inferences reasonably deducible therefrom. *McMillian v. State*, 325 Md. 272, 290, 600 A.2d 430 (1992). Consequently, absent clear error in its fact-finding, an appellate court is required, in deference to the trial court, to accept those findings of fact. Maryland Rule 8–131(c). Furthermore, Rule 8–131(c) and its predecessors were "only intended to prevent manifest error;" they were not "intended, and will not be construed to permit [an appellate court] to reverse judgments merely because [its] conclusion on the record is different from that of the trial judge." *Lambert v. State*, 196 Md. 57, 68, 75 A.2d 327, 332 (1950).

As already indicated, the evidence adduced at the motions hearing is to be viewed in the light most favorable to the petitioner. So viewed, there are two interpretations of the trial court's decision that establish that it is not clearly erroneous or founded on a faulty premise. First, the evidence supports the motions court's conclusion that Officer Ottey did not provide any, not to mention an adequate, predicate as to how, or why, he was able to identify the substance in the petitioner's pocket as crack cocaine. Second, based on the evidence before it, the motions court could have disbelieved Officer Ottey's statement of his ability to identify crack cocaine on the basis of feel alone, *i.e.*, it did not believe that what he felt in the petitioner's pocket was readily apparent to the officer. We shall address each of these possible interpretations in turn.

### IV.

■ Concluding his oral opinion, the motions judge stated, "[T]here are insufficient facts for me to accept [Officer Ottey's] opinion [in] the record." Thus, the motions judge seemed to determine that the evidence was insufficient, that the basis for the officer's conclusion was inadequate. This was an evidentiary determination of the kind covered by Rule 8–131(c). The State had the burden of proof, including offering a sufficient evidentiary predicate for any opinion or conclusion that one of its witnesses might draw. Where the testimony of an expert witness is at issue, unless the motions court is satisfied that the State has provided a basis for the conclusions that expert draws and that determination is not clearly erroneous, it is free to reject the expert's opinion.

Under Maryland law,

an expert must testify to the basis of his or her opinion before the expert may testify to the opinion. If the basis is one of first-hand knowledge, the expert must testify to the gaining of that knowledge.... The expert's opinion is of no greater value than the soundness of the reasons given for it will warrant. If no adequate basis for the opinion is shown, the opinion should not be admitted or, if already admitted, should be stricken.

L. McLain, *Maryland Evidence* § 705.1 (1987). Moreover, as we have held:

"[A]n expert opinion 'derives its probative force from the facts on which it is predicated, and these must be legally sufficient to sustain the opinion of the expert.' Specifically, ....:

The premises of fact must disclose that the expert is sufficiently familiar with the subject matter under investigation to elevate his opinion above the realm of conjecture and speculation, for no matter how highly qualified the expert may be in his field, his opinion has no probative force unless a sufficient basis to support a rational conclusion is shown. *State, Use of Stickley v. Critzer,* 230 Md. 286, 186 A.2d 586, and cases cited therein; *Hammaker v.*

*Schleigh,* 157 Md. 652, 147 A. 790. *The opinion of an expert, therefore, must be based on facts, proved or assumed, sufficient to form a basis for an opinion,* and cannot be invoked to supply the substantial facts necessary to support such conclusion. The facts upon which an expert bases his opinion must permit reasonably accurate conclusions as distinguished from mere conjecture or guess. *Marshall v. Sellers,* 188 Md. 508, 53 A.2d 5."

*Beatty v. Trailmaster,* 330 Md. 726, 741, 625 A.2d 1005, 1013 (1993)(emphasis added)(quoting *State Department of Health, et al. v. Walker,* 238 Md. 512, 520, 209 A.2d 555, 559–60 (1965)). *See also Evans v. State,* 322 Md. 24, 34–35, 585 A.2d 204, 208–09 (1991); *Bohnert v. State,* 312 Md. 266, 274–75, 539 A.2d 657, 661 (1988).

■ In *Beatty,* this Court held that the opinion given by the plaintiff's expert "is insufficient evidence to survive summary judgment particularly when the expert [does not] cite[ ] . . . sound data to buttress his opinion." 330 Md. at 740, 625 A.2d at 1013 (1993). In that case, the status of the witness as an expert was not challenged. *Id.* at 740–44, 625 A.2d at 1012–14. Thus, *Beatty* demonstrates the principle that the mere recognition of a witness as an expert does not guarantee the acceptance of his or her expert opinion. An expert's opinion may be the basis for the trier of fact's conclusion and, so, should be considered, only if an adequate predicate for that opinion is shown; otherwise, it should be stricken. Whether a proper foundation for the opinion has been laid is a matter to be determined by the motions judge and, absent manifest error, is not reversible by an appellate court. Md. Rule 8–131(c); *State v. Raines,* 326 Md. 582, 590, 606 A.2d 265, 268 (1992); *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831, 833 (1990).

These principles were applied in *State, Use of Stickley, et al. v. Critzer,* 230 Md. 286, 186 A.2d 586 (1962). There, the widow of the deceased sued Critzer for pecuniary loss caused by his negligent operation of a Jeep in which her husband was a passenger. In defense, Critzer testified that the deceased

was the driver of the Jeep and, in support of that testimony, called a police captain as its expert on automobile crashes. Although the captain's testimony revealed that he had viewed only photographs of the jeep taken at the scene of the accident, the Jeep having been moved before he inspected it, he proposed to give an expert opinion as to who was driving the jeep at the time of the accident. The trial judge refused to allow the captain to state that opinion, explaining:

> The Captain did not point out what he saw in the photographs or in his examination of the Jeep that enabled him, as an expert, to arrive at a conclusion of who was its driver. . . . With the record in this state, it is obvious that the opinion would have been based largely, if not wholly, upon conjecture.

*Id.* at 290–91, 186 A.2d at 588.

■ Unlike *Critzer,* in this case, Officer Ottey gave his expert opinion, without objection. Nevertheless, when the trier of fact is the court, the issue is the same: is there a sufficient factual basis for that opinion? In this case, just as in *Critzer,* having decided that insufficient facts had been produced in justification, the motions judge could quite properly disregard Officer Ottey's opinion.

To testify that one knows what a particular substance is solely from touch is not irrefutable proof of the accuracy of that assertion. If it were, all the proof that would be necessary would be the incantation of "the magic words." That, as the motions judge stated is not enough. Instead, the conclusion must flow logically from the facts.

Analysis of the record reveals that the evidence the State elicited did not necessarily provide an adequate foundation for Officer Ottey's opinion. Indeed, the total evidence relevant to Officer Ottey's being able to identify crack cocaine by touch consisted of the following.[9] Officer Ottey testified that he:

9. The State's evidence established that the intersection in question was in the midst of a high drug area, as we have seen. Ordinarily, this would be relevant to the identification of the seized substance. Officer

had made five arrests in that area in the past; had executed search warrants in that area; had made a total of twenty drug arrests in 1993, 90% of which involved crack cocaine; knew how crack cocaine typically was packaged; and had felt crack cocaine numerous times. He further stated that the bulge felt like it contained "numerous rock-like substances."

To be sure, Officer Ottey's testimony provided a general description of his experience in conducting drug searches. It did not disclose, however, the number of times Officer Ottey had identified crack cocaine through a layer of clothing during previous pat-down searches or describe how crack cocaine feels to the touch. That testimony, thus, did not tend to explain how Officer Ottey was able to identify crack cocaine by touch; it did not shed any light on the reliability of his opinion in that regard. In fact, aside from the opinion, the only other evidence of the officer's tactile acuity was his affirmative response to the question whether, in the past, he had found crack cocaine on defendants while patting them down.

The State also elicited from Officer Ottey testimony regarding how crack cocaine typically is packaged, but, having done so, did not further attempt to connect that testimony to the search in question. In short, Officer Ottey's suppression hearing testimony that it was immediately apparent to him that what he felt was crack cocaine was nothing more than a conclusion and, as such, could be rejected. L. McLain, *Maryland Evidence* § 705.1.[10] After hearing Officer Ottey's testimo-

Ottey, however, undermined and, at the very least, confused its probative value when he denied that his perception of the nature of the substance in the petitioner's pocket was affected by the location. In fact, he stated that if he had felt something in the motions judge's pocket that provided his fingers with the same sensation, he would conclude that the substance was crack cocaine even if that occurred in the courthouse.

10. By way of contrast, in the District Court, albeit on cross-examination, Officer Ottey went to some pains to describe exactly how crack cocaine feels to the touch. The defense attorney had attempted to discredit the officer's testimony that he had immediately recognized that the substance in the bulge as crack cocaine; however, his questioning seemed only to substantiate the Officer's ability to identify crack

ny, the motions judge described Officer Ottey's level of certainty as a "suspicion" and commented, "It could be many things there that could give that same sense of touch. That's the troubling aspect of it." It is clear, therefore, that the motions judge was not convinced that this difficult identification was justified on the basis of the evidence before him.

## V.

The result reached by the motions judge is sustainable on an alternative ground: the motions judge simply did not find Officer Ottey credible when Officer Ottey said that the nature of the substance was readily apparent to him when he felt it.

Determining the credibility of witnesses and the weight of the evidence produced at trial are not matters entrusted to the appellate courts. *State v. Raines,* 326 Md. at 590, 606 A.2d at 268; *Wilson v. State,* 319 Md. at 535, 573 A.2d at 833–34. Credibility is defined as "worthiness of belief; that quality in a witness which renders his evidence worthy of belief." *Black's Law Dictionary* 255 (6th ed.1991). Credibility is also defined as "the quality or power of inspiring belief." *Webster's Third international Dictionary of the English Language Unabridged* 532 (1981). Aspects of Officer Ottey's testimony could have undermined the motions judge's confidence in his credibility. Officer Ottey's testimony that he knew immediately upon feeling and manipulating the bulge that it was crack cocaine seemed to have been contradicted by the following testimony: (1) Upon feeling the bulge, Officer Ottey asked the petitioner what the bulge contained [11]; (2) responding to the inquiry, "what did you think it was?", Officer Ottey stated that the "rock-like" substance in the petitioner's pocket was "crack cocaine or . . . ," pausing before

---

cocaine by "plain feel" through a pants pocket. Perhaps that explains why defense counsel did not pursue this line of questioning at the circuit court suppression hearing.

11. A reasonable trier of fact could infer from what then occurred that the revocation of consent had the effect of solidifying the officer's suspicion.

continuing to the end of his thought; (3) despite testifying to being certain that he had seized crack cocaine from the petitioner's pocket, Officer Ottey did not then arrest the petitioner. That Officer Ottey explained why he had not arrested the petitioner, and the motions judge was privy to that explanation, did not obligate the court to draw the inference favorable to the State; it well could have concluded that Officer Ottey was merely suspicious, but not to the extent required for probable cause that the substance in the petitioner's pocket was crack cocaine.[12]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.*

---

**12.** The motions judge had before him Officer Ottey's "Application for Statement of Charges/Statement of Probable Cause," which was completed December 17, 1993, the day after the seizure. In that document, Officer Ottey wrote:

I was unsure of my search and in lieu of arresting I had a MD Photo I.D. with the defendant's, Samuel Jones, Jr., information. I obtained this information knowing that I could apply for a warrant after conferring with narcotics.

I went to A.P.D. (Annapolis Police Department) and spoke with Sgt. Groh of narcotics. He told me I had a good search and to apply for a warrant.

Defense counsel also introduced into evidence a transcript of the officer's testimony at the Preliminary Hearing.

In District Court, Officer Ottey testified that, when the petitioner revoked his consent to be searched, it was readily apparent to him that the bulge contained crack cocaine. He explained that he had proceeded to seize the substance based on his vague knowledge of *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The vagueness of his knowledge, he said, also caused him to think it wiser not to arrest the petitioner immediately and to get a second opinion regarding the legality of his actions.