812 A.2d 291

**No. 29, Sept. Term, 2002.**

**STATE of Maryland**

**v.**

**Earmon Alvin WALLACE, Sr.**

Court of Appeals of Maryland.

Dec. 11, 2002.

Reconsideration Denied Feb. 11, 2003.

Gary E.. Bair, Solicitor General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioner.

Bradford C. Peabody, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

On July 26, 1999, respondent was charged in a three-count indictment with various narcotics violations arising from his arrest on July 9, 1999. On February 1, 2000, the Circuit Court for Anne Arundel County held a hearing on a pre-trial motion to suppress evidence during which respondent argued that his search was not based upon probable cause and as a result the contraband seized from him on the night of his arrest should not be permitted into evidence at trial. On February 3, 2000, the motions court filed a written opinion denying respondent's motion to suppress. On September 28, 2000, following a bench trial, respondent was convicted on an agreed statement of facts and was found guilty of possession with intent to distribute cocaine. On November 29, 2000, that court sentenced respondent to 20 years' incarceration, with all but five years suspended. On December 14, 2000, respondent noted a timely appeal to the Court of Special Appeals. On

February 27, 2002, in a reported opinion, the intermediate appellate court reversed the judgment of the circuit court. *Wallace v. State*, 142 Md.App. 673, 791 A.2d 968 (2002). On June 10, 2002, we granted the State's Petition for Writ of Certiorari. *State v. Wallace*, 369 Md. 301, 799 A.2d 1262 (2002). Petitioner presents one question for our review:

> "Did the Court of Special Appeals incorrectly hold that a passenger in a vehicle could not be searched after a drug dog has alerted an officer to the presence of illegal drugs in the vehicle, notwithstanding that the alert provided probable cause to believe drugs were present in the vehicle and/or on the person of one or more of the occupants of the vehicle?"

We affirm the judgment of the Court of Special Appeals, answer no to petitioner's question, and hold that the police did not have probable cause to search respondent, a passenger in the vehicle. Further, we hold that the Court of Special Appeals properly held that a positive canine alert to contraband in a vehicle, without more, does not establish probable cause to search all of the passengers in a vehicle.

## I. Facts

On July 9, 2000, at approximately 3:00 a.m., Officer Jessica Hertik was driving her marked police car eastbound on Forest Drive in Annapolis, Maryland. As she approached Hilltop Lane, a forty mile per hour road, she observed a four-door Buick driving at a high rate of speed in the opposite direction. She made a U-turn and accelerated to 90 m.p.h. to catch up to the Buick. In addition to speeding, Officer Hertik saw the vehicle run a red light. Officer Hertik then activated her emergency equipment and the Buick pulled over.

Officer Hertik stopped behind the vehicle, exited her car and approached the driver's side of the Buick. Sitting inside of the vehicle was the male driver, a male front seat passenger, and three back seat passengers—respondent and two women. Officer Hertik recognized respondent and two of the other passengers from a previous encounter, although in her testimony at the suppression hearing she did not describe that

encounter. She informed the driver that she had stopped the vehicle for speeding and for not stopping at a traffic light. The driver of the car complied when Officer Hertik requested to see his driver's license and car registration.

When Officer Hertik walked back to her car, she met another officer who had arrived at the scene. She was Officer Elizabeth Nelson who was on duty with Bosco, her drug detection dog.[1] Officer Hertik explained what had occurred and then proceeded to run a license check and write two tickets. In the meantime, other police units had arrived on the scene and these additional officers watched the Buick while Bosco scanned the vehicle. Bosco made two positive alerts to the presence of drugs at the front and rear seam of the driver's side front door. Officer Nelson testified that, because of various factors, i.e., air currents in the vehicle, there is little correlation between where a canine alerts and where drugs are found in the vehicle; rather it is just a general alert to the whole of the passenger compartment of the car itself.

Officer Nelson advised Officer Hertik, who was still in the process of writing tickets, that Bosco had made a positive alert on the vehicle. While Officer Nelson returned Bosco to her patrol car, Officer Hertik approached the Buick to speak with the driver. She informed the driver that she suspected that the vehicle contained drugs and asked the occupants to exit the vehicle so the police could search them.

The occupants were taken out of the car one at a time and searched while the others remained in the car. The other officers watched the occupants of the car while the searches were being conducted. Officer Jonathan Supko, one of the officers who had arrived at the scene, searched the three males. Officer Supko testified that his actions were not a

---

1. Officer Nelson had been with the Annapolis City Police Department for seven years and had been a certified K–9 officer for four of those years. Testimony at the suppression hearing revealed that both Officer Nelson and Bosco have undergone extensive training and updating of their skills each year.

mere "frisk" or "pat down" but were intended to discover anything suspicious, for "anything apparent ... [w]eapons and what not." Officer Supko first searched the driver and then he searched the front seat passenger.

Officer Supko next searched respondent, who was sitting behind the front passenger seat. During the search Officer Supko felt a hard object near respondent's groin, which he said he knew was not a gun, knife, or other weapon. Officer Supko handcuffed respondent with his hands behind his back, told him he was "not under arrest at th[at] time" and walked him to a grassy area away from the road to complete the search. Officer Supko stated that he had handcuffed respondent "just for my safety and his safety."

As they walked over to the grassy area, respondent moved his hips in an apparent attempt to shake the object loose. When the officer searched respondent's groin area again, the object was gone. Officer Supko saw, however, something protruding from respondent's left pants leg, which turned out to be a clear plastic baggie containing several pieces of suspected cocaine. Respondent was placed under arrest.

The two females were searched after respondent. Officer Hertik searched one of them herself. Officer Hertik searched the vehicle only after each of the occupants of the car was searched. She found $1,155 in cash in someone's shorts in the front passenger seat and a knife in a purse in the backseat. No drugs were found in the car.

Respondent alleged at a suppression hearing that there was not probable cause for his search and, as a result, the cocaine seized from him at the time of his search should be suppressed as evidence to be used at trial. The trial court denied his suppression motion and respondent was, as indicated *supra*, ultimately convicted of possession with intent to distribute cocaine. On appeal, the Court of Special Appeals reversed the judgment of the circuit court and that court's denial of respondent's motion to suppress.

## II. Standard of Review

Our review of a circuit court's denial of a motion to suppress evidence under the Fourth Amendment, ordinarily, is limited to the information contained in the record of the suppression hearing and not the record of the trial. *Carter v. State,* 367 Md. 447, 788 A.2d 646 (2002); *Ferris v. State,* 355 Md. 356, 368, 735 A.2d 491, 497 (1999); *In re Tariq A–R–Y,* 347 Md. 484, 488, 701 A.2d 691, 693 (1997), *cert. denied,* 522 U.S. 1140, 118 S.Ct. 1105, 140 L.Ed.2d 158 (1998); *Simpler v. State,* 318 Md. 311, 312, 568 A.2d 22, 22 (1990); *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749, 755 (1987). When there is a denial of a motion to suppress, we are further limited to considering facts in the light most favorable to the State as the prevailing party on the motion. *See Scott v. State,* 366 Md. 121, 143, 782 A.2d 862, 875 (2001); *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239, 1240 (1990); *Simpler,* 318 Md. at 312, 568 A.2d at 22. Even so, we review legal questions *de novo,* and where, as here, a party has raised a constitutional challenge to a search or seizure, we must make an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case. *See Stokes v. State,* 362 Md. 407, 414, 765 A.2d 612, 615 (2001) (quoting *Jones v. State,* 343 Md. 448, 457–58, 682 A.2d 248, 253 (1996)); *Wilkes v. State,* 364 Md. 554, 569, 774 A.2d 420 (2001); *In re Tariq A–R–Y,* 347 Md. at 489, 701 A.2d at 693. We will not disturb the trial court's factual findings unless they are clearly erroneous. *See Wengert v. State,* 364 Md. 76, 84, 771 A.2d 389, 394 (2001).

## III. Discussion

Petitioner contends that a positive canine alert in and of itself provides the police with probable cause to search all passengers in an automobile and that the Court of Special Appeals improperly held that the positive canine alert in this case did not give the police probable cause to search respondent on the night in question. As indicated *supra,* we disagree with petitioner's contention and affirm the decision of the Court of Special Appeals.

The Fourth Amendment to the United States Constitution states:

"The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

There are certain well-defined exceptions to the Fourth Amendment's requirement that searches be based upon probable cause and conducted pursuant to a valid warrant, but for purposes of this opinion we need not note or discuss them all. *See generally, United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427(1973) (permitting a search of a person incident to a full custody arrest supported by probable cause to effectuate the arrest—the "search incident to arrest" exception) and *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (permitting the warrantless search of a passenger compartment of a vehicle incident to a lawful custodial arrest).[2]

There is no argument made in this case that the warrantless search of the four-door Buick did not meet the constitutional requirements of the Fourth Amendment and that the search of the car was based upon probable cause. Nor, is there any argument that the actions taken by the officers up to and including the canine sniff of the Buick were anything but proper and, thus, provided the police officers with probable cause to search the car. Accordingly, we do not directly

---

**2.** We note that the night respondent was arrested he was first asked to exit the vehicle and a police officer began to search him not as a "frisk" or "pat down" but to find anything "suspicious." During this search, the officer felt something hard, which he admitted was not a gun, a knife or a weapon, but put handcuffs on respondent for safety and told respondent he was "not under arrest at the time." Petitioner did not contend, prior to this appeal, that respondent was "arrested" at the time of his "search" potentially making his search lawful as a search incident to an arrest. *See Klauenberg v. State,* 355 Md. 528, 552, 735 A.2d 1061, 1074 (1999) ("[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal.").

address these events except as necessary to address the issue presented.

■ In *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court first recognized an "automobile exception" to the Fourth Amendment's warrant requirements, an exception such as the search incident to a lawful arrest exception set forth many years later in *Robinson,* referenced *supra.* Presently known as the "Carroll Doctrine," the exception allows vehicles to be searched without a warrant provided that the officer has probable cause to believe that a crime—connected item is within the car. Following *Carroll,* the Supreme Court has held that during a lawful traffic stop officers can compel the driver of a vehicle to exit the car. *See Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). The *Mimms* holding was extended to passengers as well. *See Maryland v. Wilson,* 519 U.S. 408, 410–11, 117 S.Ct. 882, 884–85, 137 L.Ed.2d 41, 45–46 (1997). Since *Wilson,* with the case of *Wyoming v. Houghton,* 526 U.S. 295, 307, 119 S.Ct. 1297, 1303–04, 143 L.Ed.2d 408, 419 (1999), the Supreme Court has gone on to hold that a passenger's property left within a vehicle, when occupants are ordered out of a car, falls within the permissible scope of a "Carroll Doctrine" warrantless search.

■ Further, the law is settled that when a properly trained canine alerts to a vehicle indicating the likelihood of contraband, sufficient probable cause exists to conduct a warrantless *"Carroll"* search of the vehicle. *See Gadson v. State,* 341 Md. 1, 668 A.2d 22 (1995), *cert. denied,* 517 U.S. 1203, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996); *Accord United States v. Dovali–Avila,* 895 F.2d 206, 207 (5th Cir.1990); *In re Montrail M.,* 87 Md.App. 420, 437, 589 A.2d 1318, 1327 (1991).

In this opinion we focus solely on the narrow question of whether the police officers had probable cause to search respondent, who was not the owner or driver but a mere passenger of the automobile, based only upon a positive canine alert that drugs were somewhere in the interior of the automobile.

## a. Probable Cause

 In order for a warrantless search or arrest to be legal it must be based upon probable cause.[3] Regarding arrests we have held that a police officer can arrest an accused without a warrant if the officer has probable cause to believe that a crime has been or is being committed by an alleged offender in the officer's presence, the general standard for probable cause. *Woods v. State*, 315 Md. 591, 611–12, 556 A.2d 236, 246 (1989); *Nilson v. State*, 272 Md. 179, 184, 321 A.2d 301, 304 (1974).[4]

 We have gone on to state that:

---

3. We note that our discussion of probable cause includes cases where probable cause to arrest was at issue. Nonetheless, our discussion of probable cause generally and whether there was probable cause to search respondent in this case is based upon the same standard for probable cause to arrest, because, "In terms of quantifiable probability, moreover, the probable cause for a ... search is the same as the probable cause for a warrantless arrest. Whatever the possible occurrence or circumstance, the likelihood of which we are assessing, probable cause itself is a constant. It does not take more probable cause to support a warrantless arrest than it does to support a warrantless ... search. The classic *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), definition of probable cause is used for both situations, with no distinction made between the predicate for a[ ] ... search and the predicate for a lawful arrest.... The measure of likelihood is the same." *State v. Funkhouser*, 140 Md.App. 696, 721, 782 A.2d 387, 402 (2001). Further, the United States Supreme Court stated in *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979), that "[w]here the standard is probable cause, a search *or* seizure of a person must be supported by *probable cause particularized with respect to that person.*" (emphasis added).

4. Maryland Code (2001), section 2–202 of the Criminal Procedure Article states:

" § 2–202. **Warrantless arrests—In general.**

(a) *Crime committed in presence of police officer.*—A police officer may arrest without a warrant a person who commits or attempts to commit a felony or misdemeanor in the presence or within the view of a police officer.

(b) *Probable cause to believe crime committed in the presence of officer.*—A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the presence or within the view of the police officer may arrest without a warrant any person whom the police officer reasonably believes to have committed the crime.

"Probable cause, we have frequently stated, is a nontechnical conception of a reasonable ground for belief of guilt. *Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281 (1988); *Edwardsen v. State,* 243 Md. 131, 136, 220 A.2d 547 (1966). A finding of probable cause requires less evidence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion. *Woods, supra,* 315 Md. at 611, 556 A.2d 236; *Sterling v. State,* 248 Md. 240, 245, 235 A.2d 711 (1967); *Edwardsen, supra,* 243 Md. at 136, 220 A.2d 547. Our determination of whether probable cause exists requires a nontechnical, common sense evaluation of the totality of the circumstances in a given situation in light of the facts found to be credible by the trial judge. *State v. Lemmon,* 318 Md. 365, 379, 568 A.2d 48 (1990); *Doering, supra,* 313 Md. at 403–04, 545 A.2d 1281. Probable cause exists where the facts and circumstances taken as a whole would lead a reasonably cautious person to believe that a felony had been or is being committed by the person arrested. *Woods, supra,* 315 Md. at 611, 556 A.2d 236; *Stevenson v. State,* 287 Md. 504, 521, 413 A.2d 1340 (1980); *Duffy v. State,* 243 Md. 425, 432, 221 A.2d 653 (1966). Therefore, to justify a warrantless arrest the police must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion. *Lemmon, supra,* 318 Md. at 380, 568 A.2d 48." *Collins v. State,* 322 Md. 675, 680, 589 A.2d 479, 481 (1991).

To determine whether an officer had probable cause in a specific case, here probable cause to search, "the reviewing court necessarily must relate the information known to the

---

(c) *Probable cause to believe felony committed.*—A police officer without a warrant may arrest a person if the police officer has probable cause to believe that a felony has been committed or attempted and the person has committed or attempted to commit the felony whether or not in the presence or within the view of the police officer."

This provision of the Criminal Procedure Article in respect to arrest generally is language derived without substantive change from former Article 27, section 594B(a), (b) and (c) of the Maryland Code.

officer to the elements of the offense that the officer believed was being or had been committed." *DiPino v. Davis,* 354 Md. 18, 32, 729 A.2d 354, 361 (1999).

In the case *sub judice,* in order for respondent's warrantless search to be valid, the officer must have had probable cause at the time of the search to believe that respondent was in possession of a controlled dangerous substance. Possession is defined in the Maryland Code (2001), section 5–101(u) of the Criminal Law Article as "exercis[ing] actual or constructive dominion or control over a thing by one or more persons." This statute recognizes, as we have held, that possession may be constructive or actual, exclusive or joint. *State v. Leach,* 296 Md. 591, 596, 463 A.2d 872, 874 (1983).

### b. Case Law

This Court has had the occasion to apply the elements of possession to cases involving a Fourth Amendment challenge, like the constitutional challenge which initiated the issue in the case *sub judice.* We had the occasion to do so very recently in *Pringle v. State,* 370 Md. 525, 805 A.2d 1016 (2002), where the defendant challenged his warrantless arrest for possession. In that case, Joseph Jermaine Pringle was a front seat passenger in a car being driven by its owner and there was another backseat passenger. The vehicle was pulled over for a routine traffic stop. During a search of the vehicle, a sum of rolled up money was found inside the closed glove compartment located in front of Pringle and drugs were found hidden behind a rear armrest. The officer who conducted the traffic stop only saw the money in the closed glove box when the driver/owner of the vehicle opened the glove compartment for the vehicle registration. The officer at the scene then asked the owner/driver of the car if he could search the vehicle and the owner/driver consented to the search. After the three occupants of the car were taken out of the vehicle, the officer searched the car and found five glassine baggies containing suspected cocaine hidden inside or behind an armrest in the backseat. The officer on the scene questioned all three men

about the ownership of the drugs and money and told the three men that, if no one admitted to ownership of the drugs he was going to arrest them all. Because none of the three men offered any information regarding the ownership of the drugs and/or money, all three men were placed under arrest and transported to the police station.

Later, at the station house, Pringle acknowledged that the cocaine belonged to him. Subsequently, his friends, the owner/driver of the automobile and the other passenger, were released.

During a pre-trial suppression hearing, Pringle argued that the confession should be suppressed as the unlawful fruit of an illegal arrest because there was no probable cause for his arrest at the time of the traffic stop. The trial court denied his motion. Pringle made the same claim on appeal to the Court of Special Appeals. While we noted that the evidence might have constituted probable cause to arrest the owner or the driver of the vehicle, we held that Pringle's mere presence as a front seat passenger in an automobile in which contraband was found in a concealed place in the rear seat and where money was found in a closed glove compartment did not constitute probable cause to arrest Pringle. In her concurring opinion in *Pringle,* Judge Raker stated:

> "Apparently, proximity to concealed drugs is sufficient for the dissent to find probable cause to arrest.... Although it may be sufficient under certain circumstances, the discovery of three men riding in a car in the early morning hours, with some rolled money in a closed glove box and drugs hidden from view in a back arm rest, without more, hardly constitutes probable cause to arrest a front seat passenger who has no possessory interest in the automobile.

> "I cannot improve on Judge Sonner's analysis ... below:

> '... I believe the majority has stopped far short of considering whether Pringle, in any way, knowingly exercised dominion or control over the secreted contraband, and has resorted instead to "speculation or conjecture."

Although Pringle ... may have been within an arm's reach of the drugs, in fact, to expose the drugs, he would have had to stretch his body, maneuver around the back of his seat, and pull down the arm rest. And ... Pringle was not sitting in a closed car that emanated the pungent, easily detectable smell of marijuana, which were critical facts in Judge Moylan's analysis sustaining Folk's conviction thirty years ago. Although the majority [of the Court of Special Appeals] attaches some significance to the large roll of currency found in the glove compartment, located in front of Pringle's seat, cash, in and of itself, is innocuous and certainly less suspicious than the scales and cutting tools discounted by the Court of Appeals in *Leach*. Further, there was no showing whatsoever that Pringle, as a passenger in the car, had any connection to, or knowledge of, the money found within the glove compartment of someone else's car.' "

In *Collins, supra,* we also addressed a situation involving a warrantless arrest and a subsequent challenge to probable cause for that arrest. On September 20, 1988, at 3:00 a.m., Officer Holmes of the Salisbury Police Department noticed five men standing about five feet from a Mustang that was parked in the entrance to a car dealership. Officer Holmes approached the men and asked what they were doing. The driver of the Mustang, Steven Lewis, stated that they were looking at the BMW's. Officer Ewing arrived on the scene to assist Officer Holmes. Officer Ewing saw a 35mm film canister on the rear seat of the Mustang and he asked one of the men to retrieve the canister for him. Inside the canister, Officer Ewing found over twenty cellophane wrapped packets containing cocaine and proceeded to arrest all of the men, including Collins. Collins alleged at a suppression hearing that there was not probable cause for his arrest. The trial court denied his suppression motion and Collins was convicted of possession of cocaine.

Collins appealed and, before this Court, asserted that there

was not probable cause for his arrest.[5] He claimed that his mere proximity to the incriminating evidence, or to an offender, was not enough for finding of probable cause for arrest. Collins also asserted that there was no further factual basis to connect him to the drugs or to having committed any crime. In addressing Collin's claims, we discussed the United States Supreme Court case of *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) and our *Livingston* case and ultimately held in favor of Collins that there was not probable cause for his arrest.

*Di Re* is not a canine alert case, but it has influenced the discussion in cases such as the one at bar. Di Re was seated in the front passenger seat of a vehicle from which an informant had purchased counterfeit gasoline ration coupons from the driver and the backseat passenger was seen holding the gasoline ration coupons. The police arrested and searched all three men. The Supreme Court held that Di Re's mere presence in a vehicle involved in criminal activity, without more, did not cause him to lose his right to be free from a search of his person. The Supreme Court explained:

"There is no evidence that it is a fact or that the officers had any information indicating that Di Re was in the car when Reed obtained ration coupons from Buttitta, and none that he heard or took part in any conversation on the subject. . . .

"An inference of participation in conspiracy does not seem to be sustained by the facts particular to this case. The argument that one who 'accompanies a criminal to a crime rendevous' cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passers-by, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal.

---

**5.** Collins specifically relied upon the case of *Livingston v. State,* 317 Md. 408, 564 A.2d 414 (1989), discussed *infra,* when he asserted lack of probable cause for his arrest at his motion to suppress hearing.

If Di Re had witnessed the passing of papers from hand to hand, it would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit. Indeed it appeared at the trial to require an expert to establish that fact. Presumptions of guilt are not lightly to be indulged form mere meetings." *Di Re,* 332 U.S. at 593, 68 S.Ct. at 228, 92 L.Ed. at 219–20.

Essentially, in *Di Re,* the Supreme Court held that "we are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *Id.* at 587, 68 S.Ct. at 225, 92 L.Ed. at 216.

In *Livingston v. State,* 317 Md. 408, 564 A.2d 414 (1989), Wesley Livingston was one of three people in a vehicle that was stopped for speeding. Livingston, who was not the owner of the vehicle, was sitting in the backseat. During the stop, the state trooper saw two marijuana seeds on the floor of the front passenger's side. The state trooper arrested all three occupants of the car and upon searching Livingston pursuant to the arrest, the state trooper discovered cocaine and marijuana in Livingston's pocket. Livingston was charged with possession of cocaine with intent to distribute, possession of cocaine and possession of marijuana. We held that the two seeds on the floor in the front of the vehicle did not provide the state trooper with probable cause to arrest Livingston and then conduct a search incident to that arrest. Or, in the alternative, that the mere proximity to incriminating evidence or to an offender is not enough for a finding of probable cause for arrest generally.

In *People v. Fondia,* 317 Ill.App.3d 966, 251 Ill.Dec. 553, 740 N.E.2d 839 (2000), the Illinois Appellate Court considered a case with facts similar to the case *sub judice.* There, after a lawful traffic stop, an officer requested a police canine unit while he was conducting computer inquires and a warrants check. The driver and two passengers remained in the car while the canine gave a positive alert to drugs in the car, specifically near the rear seam of the driver's door. The

police then had the driver exit the automobile and told the driver that the canine had given a positive alert to drugs in the car. The police officer then searched the occupants of the vehicle and the vehicle itself. The defendant, Fondia, a backseat passenger, was removed from the car and told "that the dog had alerted and that [Officer] Gallagher was going to search him." *Fondia,* 251 Ill.Dec. 553, 740 N.E.2d at 841 (alteration added). The officer then put his hand into Fondia's pocket when he felt a metal tube that he recognized to be a crack pipe. The officer then removed the tube, handcuffed Fondia and completed the search. The tube field-tested positive for cocaine and Fondia was arrested for possession of drug paraphernalia.

In *Fondia,* it was also stipulated to that the traffic stop was lawful and that the dog was properly trained. The trial court, in that case, ruled that the positive canine alert gave the police "probable cause to search the vehicle ..., ... and all of the occupants.'" *Id.* at 841. On appeal, the Illinois Appellate Court agreed that the alert by a dog trained to detect contraband gave the police "probable cause to believe that controlled substances were somewhere *either* within the car *or* on the person of one or more of its occupants.... However, before [Officer] Gallagher searched defendant's person, he could have—and should have—had the dog sniff defendant to see if the dog would again alert." *Id.* at 842 (alteration added) (emphasis added). The Illinois Appellate Court went on to note that it has been held that a canine sniff is not a search for purposes of the Fourth Amendment, pursuant to *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), and opined:

"If a dog sniff ... had occurred and the dog alerted, then probable cause would have existed to search defendant's person. If, on the other hand, the dog did not alert after sniffing defendant but did alert as to one of the car's other occupants or as to the now-unoccupied car interior, then no basis would have existed to search defendant's person. By not conducting additional dog sniffs of defendant or the car's other occupants (which the officers had it entirely in

their power to do), the officers willfully denied themselves this additional, critical information that would have sharpened their focus on whom to search, leaving themselves in a position of 'willful ignorance.'

"This posture of 'willful ignorance' dissipates the reasonableness of the police conduct in this case, given the nature of that conduct, which was a search of defendant's person, not merely a container within the car. In *Houghton* ... the Supreme Court wrote of the 'unique, significantly heightened protection afforded against searches of one's person and quoted the following from *Terry v. Ohio*, 392 U.S. 1, 24–25, 88 S.Ct. 1868, 1881–82, 20 L.Ed.2d 889, 908 (1968): ' "Even a limited search of the outer clothing ... constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." ' "

*Fondia*, 251 Ill.Dec. 553, 740 N.E.2d at 842–43. *See also State v. Kelly*, 2001 WL 1561543 (Ohio App.2001) (ruling that a canine alert to the presence of drugs in a car gave police probable cause to search the interior of the car, but not to search the occupants of the car, one of which was the defendant, because the general canine alert was not specific to indicate that the defendant had drugs on his person).

### c. Consideration of Probable Cause to Search Respondent

In the case *sub judice* and relying on our holdings in *Pringle, Collins, Livingston*, the Supreme Court's holding in *Di Re*, the Illinois case of *Fondia*, we hold that there was not probable cause to search respondent. This case is similar to the situation in *Fondia*, where the defendant was in a car that had had a positive drug alert by a drug detection dog and the officer then removed the defendant from the car, searched him, found drug paraphernalia and arrested him. We emphasize, just as the Illinois court in *Fondia* emphasized, that while the alert by a drug dog trained to detect contraband, undisputedly, gave the police probable cause to believe there was contraband somewhere in the car or on the person of someone

in the car, the canine sniff of the vehicle alone did not amount to probable cause to then search each of the passengers.

Without additional facts that would tend to establish respondent's knowledge and dominion or control over the contraband before his search, the K–9 sniff of the car was insufficient to establish probable cause for a search of a non-owner, non-driver for possession. Merely sitting in the back-seat of a car did not amount, in this case, to probable cause specific to respondent to search and subsequently arrest him. If the K–9 had sniffed respondent, and specifically alerted to respondent, before the officer searched him, probable cause for the search might have existed. If the officers simply had Bosco sniff each of the passengers of the car prior to searching them, then probable cause might have existed to search any of the passengers who positively re-alerted the canine to contraband. This did not happen here.[6]

Moreover, as the Court of Special Appeals in this case opined, some link between the passenger and the crime must exist or probable cause generally will not be found. That was the case here. Respondent was searched merely based upon the fact that probable cause existed to search the vehicle based upon a general canine scan of the car, nothing more.

---

**6.** A certified drug detection dog is very accurate and minimally intrusive, much less so than a search because "Even a limited search of the outer clothing ... constitutes a severe, though brief, intrusion upon cherished personal security.'" *Terry v. Ohio*, 392 U.S. 1, 24–25, 88 S.Ct. 1868, 1881–82, 20 L.Ed.2d 889, 908 (1968). Also, a canine sniff, in and of itself, is not a search for purposes of the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110, 121 (1983). Therefore, a dog sniff of the passengers might have been appropriate after the K–9 alerting had established probable cause existed to search the vehicle. Under petitioner's reasoning, if contraband were found in a twelve-passenger van, or perhaps a bus, trolley, or taxi that you share with someone for means of public transportation, the police would be permitted to search everyone in that vehicle simply because a drug detection dog gave a positive general alert to contraband in that vehicle somewhere. Simply stated, a policy of permitting officers to search on this basis alone until contraband is found on someone, without other indications of particularized suspicion of contraband on that person, is, in our view, constitutionally unacceptable. *See Pringle, supra.*

Without any other indicia of possession of contraband, specifically relating to respondent, there was no probable cause for the officer, at that point in time on the night in question, to have sufficient probable cause to search respondent. There simply was no link or further factual basis to connect respondent to drugs or to having committed any crime solely upon Bosco's positive scan of the vehicle owned and driven by another person.

In contrast with the cases previously discussed, petitioner asserts that the *dicta* intimated by this Court and the Court of Special Appeals in the cases of *Wilkes v. State,* 364 Md. 554, 587 n. 24, 774 A.2d 420, 439 n. 24 and *State v. Funkhouser,* 140 Md.App. 696, 782 A.2d 387 (2001) support a finding of probable cause to search not only the vehicle itself *but also* the passengers of a vehicle when there has been a positive alert by a drug detection dog to contraband somewhere in a vehicle. In *Wilkes,* in a footnote, this Court recognized that the cases from some jurisdictions have taken the position that a positive alert to contraband by a drug dog amounted to probable cause to effectuate a warrantless arrest. In *Funkhouser,* the Court of Special Appeals held that when a qualified drug dog signals to its handler that narcotics are in a vehicle there is *ipso facto* probable cause to justify a warrantless *Carroll* doctrine search of the vehicle. But, petitioner fails to recognize that searches of vehicles pursuant to a positive canine alert and probable cause to do so is well-settled and is distinguishable from the issue raised in this case.[7]

Additionally, both *Wilkes* and *Funkhouser* are factually distinguishable because in both of those cases the person searched and arrested was the sole occupant of the car and the owner/driver of the car. In neither case was the person searched a mere passenger. In *Funkhouser,* the Court of Special Appeals stated "The police not only had probable cause [after a positive canine scan] to search the Jeep wrangler; they also had probable cause to arrest Funkhouser as its

---

7. *See* discussion in text *supra* regarding the *Carroll* doctrine.

driver and lone occupant." Funkhouser, 140 Md.App. 721, 782 A.2d 402 (alteration added). Admittedly, we stated in *Wilkes* "that once a drug dog has alerted the trooper to the presence of illegal drugs in a vehicle, sufficient probable cause existed to support a warrantless arrest." 364 Md. at 554 n. 24, 774 A.2d at 439 n. 24. However, as in *Funkhouser*, Wilkes was the driver and the only person in the vehicle. Petitioner also asserts that the case of *United States v. Klinginsmith*, 25 F.3d 1507 (10th Cir.1994), *cert. denied*, 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 602 (1994), cited in *Wilkes*, supports the extension of probable cause to include passengers. Klinginsmith was a passenger in a car driven by another person. The police had placed a sign near the highway that read "Narcotic Check Lane Ahead," but the sign was a ruse hoping to get narcotics traffickers who saw the sign to exit the highway on a particular exit. When the driver of the car exited the highway, the police pursued the car and stopped it at a gas station. The troopers began asking questions of both of the occupants, including Klinginsmith, and both men consented when the troopers asked to search the car. In the meantime, a canine unit had arrived on the scene and gave a positive alert for narcotics in the car. The Tenth Circuit held that "when the dog 'alerted,' there was probable cause to arrest [the driver and passenger]." *Klinginsmith*, 25 F.3d at 1510. We also recognize that the U.S. District Court for the District of Kansas recently reaffirmed the holding in *Klinginsmith* in *United States v. Garcia*, 52 F.Supp.2d 1239 (D.Kan. 1999). Despite the holdings in *Klinginsmith* and *Garcia*, we hold that those cases are not controlling as to the issue currently for our review. Rather, we hold in line with the body of case law discussed *supra*, especially our very recent holding in *Pringle*, and affirm that a positive canine scan to a vehicle's interior compartment generally, without more, does not rise to probable cause to search all passengers of that vehicle.

A passenger in an automobile is generally not perceived to have the kind of control over the contents of the vehicle as does a driver and cases from this State have noted the distinction between drivers and owners and passengers of

vehicles. Therefore, some additional substantive nexus between the passenger and the criminal conduct must appear to exist in order for an officer to have probable cause to either search or arrest a passenger.

Pursuant to the facts of the case *sub judice,* there was no link, beyond the positive canine alert to drugs in the car somewhere, between respondent and the drug scan by Bosco of the passenger compartment as a whole. At the time of the search of respondent, there was no evidence, other than Bosco's alert to the car in which respondent and four others had been sitting, to establish respondent's possible possession of drugs. There were no circumstances in this case indicating that there were drugs or drug paraphernalia visible to either the occupants of the car or the officers looking into the vehicle, there was no evidence of any odor of drugs emanating from the vehicle that would have been detectable to a passerby or even to a passenger, nor is there any evidence that any of the occupants prior to the search exhibited any suspicious behavior to the officers. We recognize that if, in a particular case, the facts justify it, there may be a constitutionally acceptable basis for searching the passengers, but that is not so under the facts of the case *sub judice.*

## IV. Conclusion

As we have indicated we do not dispute that Bosco's positive alert provided evidence of a commission of a crime and that Bosco's alert, alone, provided adequate probable cause for the officers to search the automobile without a warrant. However, without anything more than the positive canine alert to drugs in the automobile somewhere, *i.e.,* something more particular linking any one passenger in the car, including respondent, to the drugs sniffed by Bosco, there was insufficient probable cause to search the passengers of the automobile in question in this case. A canine alert on the exterior of a vehicle does not support the proposition that the drugs potentially in the car are concealed on a *particular* occupant of that vehicle. When the police get all of the occupants out of the vehicle and find no drugs in the vehicle, they cannot use a

positive general canine scan of the car as authority to go further and search a non-owner/non-driver passenger. In the case *sub judice,* the search of respondent on these facts was unlawful. The motion to suppress should have been granted.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.**

Dissenting Opinion follows.

HARRELL and BATTAGLIA, JJ. dissent.

Dissenting Opinion by HARRELL, J., in which BATTAGLIA, J., joins

Consonant with my association with the dissent in *Pringle v. State,* 370 Md. 525, 556–66, 805 A.2d 1016, 1033–40 (2002), I respectfully dissent in the present case. Although *Pringle* presaged the result in this case, I cling to a view that both it and this case are decided wrongly. In this case, I would adopt the reasoning of *United States v. Klinginsmith,* 25 F.3d 1507 (10th Circ.1994), *cert. denied,* 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 602 (1994) and *United States v. Garcia,* 52 F.Supp.2d 1239 (D.Kan.1999) and reverse the Court of Special Appeals.

Judge BATTAGLIA authorizes me to state that she joins this dissent.