20 A.3d 143

**Darvell Lamar BELOTE**

v.

**STATE of Maryland.**

**No. 2633, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

May 24, 2011.

49

Stacy W. McCormack (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Gary E. O'Connor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: MATRICCIANI, KEHOE and HOTTEN, JJ.

MATRICCIANI, J.

Appellant, Darvell Lamar Belote, was arrested and charged with various crimes, including possession with intent to distribute controlled dangerous substances ("CDS") and possession of drug paraphernalia. On January 22, 2010, the court denied appellant's motion to suppress evidence. On January 26, 2010, a jury found appellant guilty of possession with intent to distribute CDS and three related charges that merged at sentencing. Appellant noted this appeal on January 27, 2010.

### QUESTIONS PRESENTED

Appellant presents one question for our review, which we have reworded, for clarity:

Did the trial court err when it denied appellant's motion to suppress evidence?

For the reasons set forth below, we answer yes and we reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

On June 26, 2009, police [1] responded to a home invasion and attempted murder in which the perpetrators stole a Microsoft Xbox video game system. Police learned that after the robbery, on August 6, 2009, a user account associated with that game system logged on to the internet. Investigators traced the user account's internet protocol address from that date and time to the Comcast Corporation, which had assigned it to an account with the physical address of 1010 Fairground Drive, Apartment 11, in Salisbury, Maryland. Further investigation revealed that Sharon Polk was the apartment's lessee and that she resided there with two men, Keith Fitzgerald and Lamont Marvin Smith.

Police applied for a warrant to search the premises. The application's supporting affidavit stated that Polk's criminal history included a conviction for theft under $100.00 and that intrusion without warning was necessary because Fitzgerald and Smith were known to a local drug task force as vendors of CDS with "a history of use of handguns related to CDS crimes." [2]

The circuit court issued a warrant to search the apartment for the stolen video game system, handguns and handgun ammunition, and footwear and clothing stained with blood. Police executed the warrant on August 13, 2009, and found six people in the apartment, including appellant, who was in bed

---

1. The events in question involved several cooperating law enforcement agencies. For ease of reference, we have adopted the parties' custom of referring to them collectively as "the police."

2. Both men had been arrested on multiple occasions for drug-related offenses, but only Fitzgerald was known to have been convicted of CDS offenses (in 1973 and 1980), while Smith's only known convictions were related to violent robbery (in 1983).

with Polk.[3] According to police testimony, this was when they first became aware of appellant's association with Polk, appellant having not been named or otherwise described in the warrant application.

After securing the apartment's occupants in the living room, police located the video game system and continued to search the premises for other evidence listed in the warrant.

Upon searching Polk's bedroom closet, police found a lockbox under a pile of clothes. Based upon the weight and noise of its contents when moved, police suspected that it contained the firearm and ammunition they were seeking. The police picked the box's lock and found forty-one small packages containing suspected crack cocaine, additional empty "baggies," a digital scale, a folding knife, and a flavored "blunt" wrapper that can be used with tobacco but is often associated with marijuana use.

Police continued to search Polk's room and found a set of keys on her dresser. One of the keys opened the lockbox, and when police presented the set to Polk, she admitted that the keys belonged to her.

Continuing, police located a lid and empty packaging matching the scale on her dresser and in her night-stand, respectively, both of which matched the scale later discovered in the lockbox.[4] There was no evidence or indicia of CDS on, in, or

---

3. Police also found two children and two other individuals, none of whom was known to police prior to the search.

4. The trial court and both sets of appellate counsel appear to have confused this point of fact. The police officer who performed the search testified as follows:

> ... I did continue to search the bedroom. On top of the dresser there was a scale, a digital scale lid, and within the night stand there was also the original packaging for a digital scale. A digital scale was later found to be located inside of the lockbox.

It appears, however, that as often happens at trial, the witness corrected himself and in so doing unintentionally listed an additional and non-existent scale, so that the trial court assumed that there were multiple "scales." The State, however, referred only to one, arguing specifically that the arrest was "based on the totality of circumstances

near the dresser, other than the CDS and paraphernalia recovered from the lockbox.

Based upon these facts, police placed appellant under arrest for possession of CDS and drug paraphernalia. Upon arresting appellant, police "helped" him with some of his clothes,[5] then searched and recovered from his pants a key that fit the lockbox.

Appellant was charged with several crimes, including possession with intent to distribute CDS in violation of Maryland Code (2002), § 5–602 of the Criminal Law Article ("CR"), and with possession of paraphernalia in violation of CR § 5–619. Appellant moved to suppress evidence discovered from the search incident to his arrest, and at the conclusion of a hearing on January 22, 2010, the court denied appellant's motion.

On January 26, 2010, a jury found appellant guilty of possession with intent to distribute CDS and three related charges that merged at sentencing. For these crimes, the court imposed twenty years of incarceration, with all but ten suspended, and two years of supervised probation upon release from confinement. Appellant noted this appeal on January 27, 2010.

### DISCUSSION

■ Appellant argues that the trial court erred when it denied his motion to suppress evidence of the key because police found it only after arresting him without probable cause. Under the "fruit of the poisonous tree" doctrine,

---

regarding the items that were located in the lockbox *as well as the lid for the scale and the packaging for the scale that was located in the same bedroom* the Defendant was found in," later adding that when appellant was arrested, "that was after the items were located in the lockbox and that was after *the packaging and the lid for the scale were located in the bedroom* in front of the bed where the Defendant was located when [police] made entry into the house." (Emphasis added.)

5. It is unclear from the testimony—and ultimately irrelevant—whether police "helped" appellant don his shirt or his pants, or both.

evidence acquired by virtue of an illegal arrest will be excluded from a subsequent criminal prosecution. *Myers v. State,* 165 Md.App. 502, 524, 885 A.2d 920 (2005) (citing *Wong Sun v. United States,* 371 U.S. 471, 485–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The State conceded at trial that appellant's arrest was not related to the search warrant being executed, and so the case turns on whether police had probable cause to arrest appellant. *See Maryland v. Pringle,* 540 U.S. 366, 369–70, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (warrantless arrest for a felony or misdemeanor committed in the officer's presence is consistent with the Fourth Amendment if the arrest is supported by probable cause).[6]

Our review under these circumstances is guided by several principles, which the Court of Appeals summarized in *State v. Wallace,* 372 Md. 137, 144, 812 A.2d 291 (2002):

> Our review of a circuit court's denial of a motion to suppress evidence under the Fourth Amendment, ordinarily, is limited to the information contained in the record of the suppression hearing and not the record of the trial. When there is a denial of a motion to suppress, we are further limited to considering facts in the light most favorable to the State as the prevailing party on the motion. Even so, we review legal questions *de novo,* and where, as here, a party has raised a constitutional challenge to a search or seizure, we must make an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case. We will not disturb the

---

6. A warrantless arrest can also be legal or illegal according to Maryland Code (2001, 2008 Repl.Vol.), § 2–202(b) of the Criminal Procedure Article ("CP"), which requires that "[a] police officer who has probable cause to believe that a felony or misdemeanor is being committed in the presence or within the view of the police officer may arrest without a warrant any person whom the police officer reasonably believes to have committed the crime." We do not consider the difference—if any—because appellant's broad and shallow motion alleged only that the arrest was "illegal" and cited, without specification or elucidation, the Fourth and Fourteenth Amendments to the United States Constitution, rather than CP § 2–202(b).

trial court's factual findings unless they are clearly erroneous.

(Citations omitted.)

 The parties have framed the issues such that our decision turns on probable cause, where we are guided by another set of oft-cited principles, collected over years and cases:

Probable cause ... is a nontechnical conception of a reasonable ground for belief of guilt. A finding of probable cause requires less evidence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion. Our determination of whether probable cause exists requires a nontechnical, common sense evaluation of the totality of the circumstances in a given situation in light of the facts found to be credible by the trial judge. Probable cause exists where the facts and circumstances taken as a whole would lead a reasonably cautious person to believe that a felony had been or is being committed by the person arrested. Therefore, to justify a warrantless arrest the police must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion.

To determine whether an officer had probable cause in a specific case, here probable cause to search,[7] the reviewing court necessarily must relate the information known to the officer to the elements of the offense that the officer believed was being or had been committed.

*Wallace,* 372 Md. at 148–49, 812 A.2d 291 (internal citations and quotation marks omitted).

 In this case, we must determine whether the police had probable cause to suspect appellant of possession of a controlled dangerous substance and paraphernalia. Possession, according to CR § 5–101(u), "means to exercise actual or

---

7. "Probable cause" has the same general meaning when applied to an arrest as it does when applied to a search. *Wallace,* 372 Md. at 147 n. 3, 812 A.2d 291.

constructive dominion or control over a thing by one or more persons." The statute recognizes that possession may be constructive or actual, exclusive, or joint. *Wallace,* 372 Md. at 149, 812 A.2d 291 (citing *State v. Leach,* 296 Md. 591, 596, 463 A.2d 872 (1983)).

Maryland Courts often invoke the following non-exclusive list of factors to determine whether the circumstances upon a suspect's arrest indicate possession:

1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Folk v. State,* 11 Md.App. 508, 518, 275 A.2d 184 (1971).

We note that these factors are not entirely discrete because they can implicate each other—for example, mutual use and enjoyment naturally lends itself to proximity, so that the latter implies the former to a certain extent. Nevertheless, the factors do not always coincide and are thus distinct concepts. With that in mind, we would add to that list two factors that have emerged in the time since *Folk* and that are particularly relevant to the case at hand.

First, courts pay special attention to the nature of the premises where an arrest is made or search is executed, generally holding that a small or exclusive space increases probable cause to suspect criminal association among those present. *Compare Dashiell v. State,* 374 Md. 85, 102, 821 A.2d 372 (2003) ("The relationship between a patron of a bar and the bar's employee's illegal drug trafficking is, generally, more tenuous than an individual's relationship to the activities being conducted inside the private home in which they live."), *and Owens v. Lott,* 372 F.3d 267, 279 (4th Cir.2004) ("[T]he residential nature of the premises and the fact that the search occurred during daytime or early evening hours presented the

obvious risk that unsuspecting friends, neighbors, or laborers would be present during the search."), *with State v. Kinney*, 83 Ohio St.3d 85, 93, 698 N.E.2d 49 (1998) ("The small, private nature of the premises lends support to a determination of probable cause."), *and People v. Broach*, 111 Mich.App. 122, 125–26, 314 N.W.2d 544 (1981) ("Given the exclusive nature of the premises and the proximity in time to an actual drug sale, the searching officers had probable cause to believe that defendant was involved with the illegal activity within the apartment."). Courts give special considerations to automobiles, in particular. Thus, in *Wyoming v. Houghton*, 526 U.S. 295, 304–05, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), the Supreme Court distinguished *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), based on the differing natures of the premises involved:

> [A] car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing. A criminal might be able to hide contraband in a passenger's belongings as readily as in other containers in the car—perhaps even surreptitiously, without the passenger's knowledge or permission.[8]

Second, courts will consider whether the circumstances indicate a common criminal enterprise. *Maryland v. Pringle*, 540 U.S. 366, 372–73, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). As noted, above, this factor is not entirely independent of the rest. In particular, the nature of the premises is one of the many forms of evidence that can imply common enterprise. Thus, in attempting to delineate "common enterprise" as an independent factor, the *Pringle* Court cited *Houghton* for the proposition that the nature of a vehicle makes it more likely that the occupants are involved in a

---

**8.** It has not escaped our attention that these two sentences appear to contradict each other with respect to whether car passengers should be criminally suspect by association, but the point remains that police can infer different facts from different surroundings.

"common enterprise." *Id.* The *Pringle* court also indicated that the nature of the evidence discovered could indicate a common enterprise, such as the presence of items that exceed the capacity of one person to possess. *Id.* at 373, 124 S.Ct. 795 ("The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.").[9]

Having laid the groundwork of our analysis, we now examine the facts known to the police at the time of appellant's arrest to determine whether they gave rise to probable cause for his arrest for possession of CDS and drug paraphernalia. The paraphernalia charges included both the items found inside the lockbox as well as the digital scale lid and packaging recovered from Polk's dresser. Because our analysis of the latter depends in large part upon our analysis of the former, we begin by examining appellant's relation to the items inside the lockbox.

For reasons stated above—and with no small difficulty—our analysis must ignore the fact that the police found a key to the lockbox in appellant's pocket, and we must consider only the facts known to them at the time of his arrest. With that fact set aside, the State argues that appellant's presence in Polk's bed (and consequently her apartment), and their proximity to the lockbox, gave police probable cause to arrest him for possession of the CDS and paraphernalia found inside that lockbox. The State further argues that the facts allowed the police—and circuit court—to infer that appellant and Polk

---

9. We also note that "common enterprise" is related, but not equivalent, to "mutual use and enjoyment." *See Larocca v. State,* 164 Md.App. 460, 479, 883 A.2d 986 (2005) ("[T]he evidence permitted an inference that the appellant was engaged in the mutual use and enjoyment of marijuana (the fourth *Folk* factor) and that the three occupants of the car were engaged in a marijuana-focused common enterprise."). Whereas the plain meaning of "mutual use and enjoyment" implies joint *consumption,* "common enterprise" implies participation in a joint *commerce* in contraband. *See Pringle,* 540 U.S. at 373, 124 S.Ct. 795.

were involved in an ongoing relationship and thus a common enterprise with respect to the lockbox and its contents.

There is a string of reported decisions holding that similar circumstances would be insufficient to *convict* someone in appellant's position, but there is a dearth of analysis when the question is *probable cause*. *See White v. State,* 363 Md. 150, 167, 767 A.2d 855 (2001) ("[A] rational fact finder may not infer in the present case that Petitioner had dominion and control over the cocaine found in a sealed box in the trunk of a vehicle in which he apparently had limited access and no possessory interest."); *State v. Leach,* 296 Md. 591, 596, 463 A.2d 872 (1983) ("Even though [defendant] had ready access to the apartment, it cannot be reasonably inferred that he exercised restraining or directing influence over PCP in a closed container on the bedroom dresser or over paraphernalia in the bedroom closet."); *Garrison v. State,* 272 Md. 123, 136–37, 321 A.2d 767 (1974) (evidence insufficient to convict where police found no drugs or paraphernalia in the bedroom with defendant and there was no evidence that heroin packet discarded by her co-lessee husband had been stored in the bedroom or in plain view). It therefore behooves us to examine the facts at the time of appellant's arrest carefully and to determine how they fit in the legal framework set forth above.

Our analysis begins with the State's common enterprise argument, which asserts that the evidence of appellant's relationship with Polk and the nature of the premises gave police probable cause to arrest him.

First, we agree with the State that appellant's presence in Polk's bed created probable cause to believe that the two were cohabitating, but we have no authority or reason to hold that cohabitation provides probable cause to suspect appellant of a common criminal enterprise involving the CDS in question. The evidence supporting cohabitation begins and ends with appellant's presence in Polk's bed, making its overall influence in our analysis weak. At the suppression hearing, police testified only that they found the parties in bed together and thus did not provide reason to believe that the parties were

cohabitating on a long-term basis; nor did their testimony otherwise clarify the nature of appellant's relationship with Polk. Appellant was not on the apartment's lease and therefore he appears not to have had any legal right to enter or remain on the premises beyond Polk's invitation. And even at that, the record contains nothing to indicate how long or how often appellant resided there, such as the presence of appellant's belongings or other long-term provisions in Polk's apartment.

Second, an apartment bedroom lacks the features that make an automobile a literal and figurative vehicle of its occupants' criminal enterprise. First, photographs reveal that the bedroom in question is considerably larger than the passenger compartment of a car, so that an occupant will tend to be less aware of its contents. *Cf. United States v. Romero*, 452 F.3d 610, 618 (6th Cir.2006) ("Like the enclosed space of the automobile in which the individuals were arrested in *Pringle,* the relatively small and confined space of the hotel room supports the conclusion that it was reasonable for the officers to infer from the facts known to them at the time of the arrest that Santiago was involved in a common illegal-drug enterprise with Romero."). Second, a vehicle's mobility makes it especially useful in drug transactions because it can be used to evade both detection and capture, whereas there was no obvious indication that Polk's bedroom or apartment was the situs of any illicit activity.[10] Third, nearly all cases establishing probable cause to arrest for joint possession involve contraband that was concealed within the passenger compartment. Here, the CDS was secreted inside a closet, and further concealed *and secured* inside a lockbox that served to exclude anyone without a key. There was little evidence of appellant's relationship to Polk at the time of appellant's arrest, and there was no direct evidence to suggest that Polk's lockbox did *not* serve to exclude appellant from its contents, as it would exclude any other third party. With the CDS se-

---

**10.** For reasons explained below, the paraphernalia in plain view on Polk's dresser does not, alone, imply criminal activity.

cured in the lockbox, the bedroom was *not* a place into which a criminal would be *unlikely* to admit an innocent person—the opposite inference of that in *Pringle,* 540 U.S. at 373, 124 S.Ct. 795.

Third, we note that while police were aware that two of the apartment's occupants were "known" to be involved in CDS distribution, neither was present at the time of appellant's arrest. And while we agree with the State that this does not "obviate" the evidence discovered upon entry into the apartment, it severely weakens one of the few factors that leans in the State's favor under the totality of the circumstances, especially where the only evidence of criminal CDS enterprise was hidden from view.

For these reasons, neither case law nor our independent analysis combines with the facts to yield probable cause to suspect appellant of criminal enterprise involving the contents of a lockbox secreted in the corner of Polk's closet. Even in a light most favorable to the State, these facts do not support the State's proffered inferences and legal conclusion. The link between what little the police knew of the parties' relationship and the contents of a closeted lockbox is simply too tenuous to establish probable cause for appellant's arrest for possession of those illicit contents.

Lacking evidence of common criminal enterprise sufficient for appellant's arrest, we therefore turn to the remaining factors, again examining them in light of all known facts at the time of appellant's arrest. First, while appellant was physically near to the lockbox, the nature of the lockbox itself means that he was not effectively "proximate" to its *contents,* which is our main concern. Second, and for that same reason, we cannot infer that appellant had any knowledge of the CDS and paraphernalia inside the lockbox (nor could the trial court so infer).[11] Third, as we have already seen, appellant had no ownership or possessory right in the premises and was only a

---

11. As noted above and explained below, the scale packaging and lid would not necessarily provide an observer with knowledge that CDS was being stored or trafficked on the premises.

guest of unknown duration. Fourth, as we have already considered appellant's "mutuality" of criminal enterprise, the same facts that failed there also fail to establish appellant's use and enjoyment of the CDS in the lockbox. Again, taking the evidence in a light most favorable to the State, we arrive at the same conclusion: the police lacked probable cause to arrest appellant for possession of the CDS in Polk's lockbox.

The State's sole alternative argument is that police had probable cause to arrest appellant for possession of drug paraphernalia, which we now consider. Section 5–619(c) of the Maryland Criminal Law Article makes it a crime to "possess with intent to use drug paraphernalia" for various purposes, including to "prepare, test, analyze, pack, repack, store, contain, or conceal a controlled dangerous substance." Although not stated in the code section, the law implicitly requires that a suspect "know of both the presence and the general character or illicit nature of the substance," which knowledge can be inferred from the circumstances. *Dawkins v. State,* 313 Md. 638, 651, 547 A.2d 1041 (1988); *see also* CR § 5–619(a).[12]

---

**12.** Criminal Law Article, § 5–619(a), provides the following non-exclusive list of factors that indicate whether an object is drug paraphernalia:

(1) any statement by an owner or a person in control of the object concerning its use;

(2) any prior conviction of an owner or a person in control of the object under a State or federal law relating to a controlled dangerous substance;

(3) the proximity of the object, in time and space, to a direct violation of this section or to a controlled dangerous substance;

(4) a residue of a controlled dangerous substance on the object;

(5) direct or circumstantial evidence of the intent of an owner or a person in control of the object to deliver it to another who, the owner or the person knows or should reasonably know, intends to use the object to facilitate a violation of this section;

(6) any instructions, oral or written, provided with the object concerning its use;

(7) any descriptive materials accompanying the object that explain or depict its use;

(8) national and local advertising concerning use of the object;

(9) the manner in which the object is displayed for sale;

Having excluded the lockbox contents from consideration, the two possible pieces of paraphernalia were the digital scale packaging and lid, and the lockbox itself. Like the scale in *State v. Leach*, 296 Md. 591, 596, 463 A.2d 872 (1983), both of these objects are "intrinsically innocuous" and "become significant by association with drugs or cutting agents." As to the lockbox, one may have knowledge without possession, but it necessarily follows from the discussion above that there was no probable cause to believe appellant knew of the lockbox's contents. As to the scale packaging and lid—assuming that those mere accoutrements could be considered paraphernalia when associated with CDS [13]—there was no direct evidence of CDS that could have given probable cause to arrest appellant for possession of paraphernalia. Without probable cause to believe that appellant knew of their illicit nature, the lockbox and scale packaging and lid remained innocuous to him and did not justify his arrest for possession of drug paraphernalia.

For these reasons, the trial court erred when it denied appellant's motion to suppress evidence of the key found upon his arrest. The State has not argued that the remaining evidence was legally sufficient to sustain appellant's conviction, and we therefore remand this case for a new trial. *See Weitzel v. State*, 384 Md. 451, 462, 863 A.2d 999 (2004).

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR**

---

(10) whether the owner or a person in control of the object is a licensed distributor or dealer of tobacco products or other legitimate supplier of related items to the community;

(11) direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

(12) the existence and scope of legitimate uses for the object in the community; and

(13) expert testimony concerning use of the object.

**13.** The definition of "drug paraphernalia" in CL § 5–101 includes "a scale or balance used, intended for use, or designed for use in weighing or measuring a controlled dangerous substance" and "a container or other object used, intended for use, or designed for use in storing or concealing a controlled dangerous substance." Whether a lid and packaging would be captured as an integral part of a "scale" is a question unto itself.

NEW TRIAL. COSTS TO BE PAID BY WICOMICO
COUNTY.